101 F.3d 109
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
In Re Max WENDEL and Linda Wendel,
MANUFACTURERS HANOVER TRUST COMPANY, Plaintiff-Appellee,
v.
Max WENDEL and Linda Wendel, Defendants-Appellants.
 No. 95-5034.
 United States Court of Appeals, Second Circuit.
 March 29, 1996.
 
 APPEARING FOR APPELLANT:Neal Brickman, New York, New York.
 APPEARING FOR APPELLEE:Peter R. Bonchonsky, Redmond, Pollio & Pittoni, Garden City, New York.
 E.D.N.Y.
 AFFIRMED IN PART, VACATED AND REMANDED IN PART.
 Before MAHONEY, WALKER and CALABRESI, Circuit Judges.
 
 
 1
 Appeal from the United States District Court for the Eastern District of New York (Thomas C. Platt, Jr., Judge ).
 
 
 2
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York and was argued by counsel.
 
 
 3
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the order of the District Court be and it hereby is AFFIRMED in part and VACATED and REMANDED in part.
 
 
 4
 1. Defendants-appellants Max and Linda Wendel appeal from a judgment entered March 28, 1995 in the United States District Court for the Eastern District of New York in favor of plaintiff-appellee Manufacturers Hanover Trust Company ("MHT"). The Wendels received a home equity line of credit from MHT in the amount of $60,000 in November 1983. This line of credit was secured by a second mortgage on the Wendels' personal residence in Kings Park, New York. The Wendels' home was also subject to a first mortgage held by the Williamsburg Savings Bank in the amount of $35,600. MHT agreed to the Wendels' request to increase the Wendels' secured credit line to $100,000 in December 1985.
 
 
 5
 2. In October 1986, the Wendels applied for and received a loan in the amount of $158,000 from the Yegen Equity Loan Corporation ("Yegen"). The Wendels claimed that this loan was to "pay off the MHT second mortgage and tax liens," and they gave Yegen a "second" mortgage on their home. The Wendels did not tell MHT about the Yegen "second" mortgage.
 
 
 6
 3. As a result, MHT maintained the availability of the Wendels' credit line, believing that MHT had a valid second mortgage on the Wendels' home, even after the Wendels paid off their debt to MHT with the proceeds of the Yegen loan. Thereafter, Max Wendel drew $100,000 from MHT based upon the $100,000 line of credit that was still open. Thus, the total amount of all mortgages secured against their home was almost $300,000; the Wendels concede, however, that they valued their home only at $240,000.
 
 
 7
 4. The Wendels defaulted on all three loans and filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code. After the first mortgagee foreclosed on the Wendels' home, MHT and Yegen's assignee, Atlantic Financial Company ("Atlantic") litigated the priority of their respective "second" liens on the Wendel home. After the state court determined that Atlantic was entitled to priority, MHT initiated the present action for a money judgment against the Wendels in the Bankruptcy Court for the Eastern District of New York.
 
 
 8
 5. After a bench trial on January 27, 1994, the bankruptcy court determined, pursuant to 11 U.S.C. § 523(a)(2)(A), that the amount of the MHT loan was not dischargeable in bankruptcy because it had been procured through fraud, false representations, or false pretenses, and entered judgment for MHT in the amount of $223,357.20. The Wendels appealed, and the judgment of the bankruptcy court was affirmed by the district court.
 
 
 9
 6. We affirm as to Max Wendel substantially for the reasons stated by the district court. See In re Wendel (Manufacturers Hanover Trust Co. v. Wendel), No. 94 CV 1372(TCP), slip op. (E.D.N.Y. Mar. 23, 1995). As to Linda Wendel, however, we vacate and remand. The bankruptcy court stated as to her that:
 
 
 10
 Linda Wendel claims that she left all the business and financial affairs to her husband and simply signed documents presented to her. By signing these documents, however, she endorsed them as her own. The mere fact that she might not have been fully cognizant of all the actions taken by her husband does not excuse her actions; said another way, by adopting the actions of her husband, she took them for her own and should also be held accountable.
 
 
 11
 7. This is not an appropriate basis for the imposition of liability upon Linda Wendel. See In re Boice, 149 B.R. 40, 48-49 (Bankr.S.D.N.Y.1992) (wife's signing of false document inadequate to establish nondischargability as to her without proof of her intent to deceive creditor); In re Rental Journal, Inc., 111 B.R. 1012, 1016 (Bankr.S.D.Fla.1989) (same); see also In re Dougherty, 143 B.R. 23, 26 (Bankr.E.D.N.Y.1992) ("What must be decided is if there is sufficient evidence to prove that the debtor made a false representation with the purpose and intention of deceiving the creditor."); In re Magnusson, 14 B.R. 662, 669 (Bankr.N.D.N.Y.1981) ("A finding of an 'intent to deceive' is a finding of fact relating to a subjective state of mind wherein the bankrupt's credibility is an important factor."). On remand, Linda Wendel's dischargability must be reconsidered in accordance with the criteria set out in these cases.