In re Steven M. GALIZIA, Debtor.

FIRST SENECA BANK, Plaintiff,

v.

Steven M. GALIZIA, Defendant.

Bankruptcy No. 88–1292.
Adv. No. 88–0572.

United States Bankruptcy Court,
W.D. Pennsylvania.

Sept. 15, 1989.

Norman J. Barilla, New Castle, Pa., for debtor/defendant.

Richard J. Parks, Davis Reilly, P.C., New Castle, Pa., for plaintiff.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Plaintiff First Seneca Bank ("Seneca") has brought this adversary action pursuant to 11 U.S.C. § 523(a), in which it seeks to have a debt owed to it by Debtor/Defendant Steven M. Galizia ("Galizia") declared nondischargeable.

Seneca maintains that it loaned $48,-000.00 to Galizia in reliance upon a materially false financial statement executed with

intent to deceive, in violation of 11 U.S.C. § 523(a)(2)(B). In addition, Seneca contends that Galizia willfully and maliciously injured it by disposing of certain items which had been pledged as security for the loan, in violation of 11 U.S.C. § 523(a)(6).

Galizia denies that Seneca reasonably relied on the financial statement and denies that he intended to deceive Seneca. He also denies that he disposed of any collateral in a willful and malicious manner.

This Court has considered all of the testimony presented at trial, reviewed all of the relevant documents, and researched the applicable law, and herein determines that the debt in question is not dischargeable pursuant to 11 U.S.C. § 523(a)(6).

## FACTS

Galizia, who at the time was a professional landscaper and a principal of Galizia Landscaping, applied on behalf of his company for a commercial loan of $48,000.00 from Seneca. The loan ostensibly was for debt consolidation.

As part of the loan application, Galizia prepared and executed a written financial statement detailing his financial condition. Defendant claimed total assets in the amount of $79,269.95, liabilities in the amount of $37,374.37, and a net worth of $41,895.58. He further indicated fixed assets in the amount of $58,338.45. Included among the fixed assets were a Massey Ferguson 1040 Tractor/Mower (valued at $11,000.00), a Massey Ferguson 1010 Tractor/Mower (valued at $8,300.00), a Xerox computer (valued at $5,000.00), a Troy Bilt Rototiller (valued at $1,500.00), a York Rake (valued at $2,500.00), an 87-inch Yamaha $4 \times 4$ (valued at $3,300.00), and office equipment and furniture (valued at $16,531.00).

Galizia further declared that none of these fixed assets was subject to a prior security interest. However, certain of these items, specifically, the Massey Ferguson 1010, 1040 Tractors/Mowers, and the York Rake, in fact had previously been pledged as security for a loan of $9,500.00 by Mellon Bank ("Mellon").

In addition, Galizia now claims he did not own the Xerox computer which he previously had listed as a fixed asset. He now claims it is owned by his mother, Mabel Galizia, and that he is merely a lessee.

Galizia executed and delivered to Seneca a promissory note and security agreement on February 10, 1987. Those items in which he granted Seneca a security interest were listed in a separate document entitled "Description of Collateral", which also was signed by him on February 10, 1987. The security agreement incorporated the "Description of Collateral", and the following items were listed as collateral:

—1 Massey Ferguson 1010 tractor and mower
—1 Massey Ferguson 1040 tractor and loader
—1 York Rake
—1 1984 Dodge Dump Truck
—1 1984 Ford Dump Truck
—1 1985 21-foot Mach I boat
—1 1985 Shoreline boat trailer
—1 Troy Bilt Rototiller
—1 Yamaha 100 Quadrunner
—Office equipment and contents.

Seneca subsequently perfected its security interest in these items. On August 25, 1987, a 1984 Ford Truck was substituted for the 1984 Ford Dump Truck and a Chariot Trailer was substituted for the 1985 Shoreline boat trailer.

Mellon repossessed and liquidated the Massey Ferguson 1010 Tractor/Mower, the Massey Ferguson 1040 Tractor/Mower, and the York Rake when Defendant defaulted upon its loan. Seneca received no notice of this repossession, nor did it receive a distribution from their liquidation.

Some of the above previously mentioned collateral was disposed of by Galizia himself. He sold the Mach I boat and Shoreline boat trailer to Mabel Galizia, his mother, for $10,000.00 on July 15, 1987. Mabel Galizia subsequently sold the boat and trailer to a third party, who was unaware of Seneca's security interest in the boat, for $8,000.00. Galizia either traded in or sold to Sanders Yamaha the Yamaha 200 Quadrunner. Seneca has been unable to

recover it. Finally, the office equipment was either destroyed or seized by Galizia's landlord, or was given away by Galizia to unidentified persons. Galizia was unable to identify all of the equipment or to say what had happened to it. He was, however, after repeated questioning by the lawyers and this Court, able to identify some of the equipment and to state what had become of it. He testified that the equipment included, *inter alia*, a desk, bed, couch, chair, table, lamps, refrigerator, stove, and security system. Galizia further testified that his landlord had dismantled the desk and had seized the refrigerator, stove, and security system when Galizia defaulted on his rent. The desk presently is in Defendant's possession. The precise whereabouts of the other items is unknown. Galizia either sold or gave away the remaining office equipment, including the bed, couch, chair, table, and lamps, to various persons. He was unable to recall the names of those persons.

Galizia subsequently defaulted on the note and loan from Seneca. The 1984 Dodge Dump Truck and the 1984 Ford Truck were repossessed by Seneca and sold for $6,800.00 and $6,100.00 respectively. Seneca has also taken possession of the Troy Bilt Rototiller from Andre Vivano, to whom it had been given by Galizia as security for a debt he owed to Vivano.

Plaintiff has been unable to recover the Mach I boat, the York Rake, and the office equipment. The outstanding balance due and owing on Seneca's loan is $37,913.82, plus fees and costs.

## ANALYSIS

Seneca contends that Galizia's debt to it is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B), which provides that a debt for money owed by an individual debtor is not discharged to the extent that it was obtained by:

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's ... financial condition;

(iii) on which the creditor to whom the debtor is liable for such money ... reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B).

Since the dischargeability of a debt can significantly affect a debtor's ability to obtain a fresh start, the various exceptions to dischargeability set forth in 11 U.S.C. § 523(a) must be strictly construed against the creditor and in favor of the debtor. *In re Ward*, 88 B.R. 727, 728 (Bankr.W.D.Pa.1988). The creditor must prove each element of a given exception to dischargeability by clear and convincing evidence. *Ward, supra* at 729.

Seneca must prove the following elements in order to support a determination that Galizia's debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B):

(1) Galizia provided Seneca with a written statement of his financial condition;

(2) Said statement was materially false;

(3) Seneca reasonably relied upon the financial statement; and

(4) Galizia made or published the statement with the intent to deceive Seneca.

*See In re Liptak*, 89 B.R. 3, 5 (Bankr.W.D. Pa.1988).

It is undisputed that Galizia did obtain money as a result of his submitting a written statement concerning his financial condition. Galizia denies, however, that the statement was materially false; that Seneca reasonably relied on the financial statement; and that he intended to deceive Seneca in compiling the statement.

A financial statement is "materially false" if it contains an important or substantial untruth. *In re Jones*, 88 B.R. 899, 903 (Bankr.E.D.Wis.1988). The omission, concealment, or understatement of a debtor's material liabilities constitutes a "materially false" statement. *In re Jones*, 88 B.R. at 903. A recurring guidepost used by courts has been whether the creditor would have made the loan had it known of debtor's true financial condition. *See*

*Matter of Bogstad,* 779 F.2d 370, 375 (7th Cir.1985).

The financial statement submitted by Galizia was materially false. As has been noted, Galizia did not own the Xerox computer. In addition, he incorrectly stated that there were no prior security interests in the Massey Ferguson 1010 Tractor/Mower, the Massey 1040 Tractor/Mower, and the York Rake, when in fact, Mellon had a perfected security interest in all three items. Also, the office furniture and equipment which he valued at $16,531.00 was worth considerably less. Galizia, when pressed on the matter, was able to identify at most $8,900.00 worth of equipment. Such inaccuracies in the financial statement are substantial. It is likely that Seneca would not have made the loan had Galizia accurately stated his financial condition.

A rebuttable presumption of intent to deceive arises upon the making of a false financial statement. *In re Jones, supra* at 903. The creditor, however, still bears the ultimate burden of proof in this regard. *In re Hott,* 99 B.R. 664, 667 (Bankr.W.D.Pa.1989). Because a debtor will rarely, if ever, admit to having such an intent, circumstantial evidence may be considered. *In re Liptak, supra.* If the creditor presents circumstantial evidence from which intent to deceive could be inferred, the debtor cannot overcome the inference with simply an unsupported assertion of honest intent. *See In re Jones, supra* at 903. The standard for determining intent to deceive includes recklessness, indifference, and disregard for accuracy. *In re Martin,* 761 F.2d 1163, 1167 (6th Cir.1985).

The evidence presented overwhelmingly indicates that Galizia intended to deceive Seneca. Despite his protestations to the contrary, Galizia was aware that he was pledging the above items as security for the loan. He acknowledged that they were being pledged as security by affixing his signature to the document titled "Description of Collateral". Galizia was also aware that he did not own the Xerox computer. Finally, he either fabricated or was reckless in stating the value of his office equipment. Galizia has two years of college-level education, is of above-average intelligence, was an experienced businessman, and understood the concept and meaning of a security interest. These factors belie Galizia's insistence that he was a mere innocent who did not realize what he was doing.

In order to prevail under 11 U.S.C. § 523(a)(2)(B), Seneca must prove by clear and convincing evidence that it *actually* relied *and* that its reliance was *reasonable. See In re Martz,* 88 B.R. 663, 673 (Bankr.E. D.Pa.1988). The reasonableness of such reliance is to be judged by an objective standard—i.e., that degree of care which would be exercised by a reasonably cautious person in an average business transaction under similar circumstances. *In re Icsman,* 64 B.R. 58, 62 (Bankr.N.D.Ohio 1986).

Seneca's attempt to have Galizia's debt declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) must fail because Seneca has not demonstrated that it actually relied on Galizia's financial statement. The individual at Seneca who could have testified as to this matter was Mr. James Cox, the loan officer who processed Galizia's loan application. Cox was not called and did not testify. His absence was not adequately explained.

The only employee of Seneca to testify on the reliance issue was Mr. Charles Parillo, who is also a loan officer at Seneca. However, Parillo had no involvement in processing the loan application in question. He was unable to state from his own knowledge whether Seneca had actually relied on the financial statement. He conceded that he did not know whether Seneca followed its normal and usual investigative practices in this particular instance. Absent proof of reliance upon the false document, this Count must fail.

Even assuming that Seneca did actually rely upon the representations in Galizia's financial statement, such reliance was not reasonable.

The requirement of reasonableness places a measure of responsibility upon the creditor to ensure that there is some basis for relying upon the debtor's representations. Reasonableness is to be evaluated in accordance with the particular facts and circumstances of a given case. *See In re Martin,* 761 F.2d 1163, 1166 (6th Cir.1985). Even a strong showing that the debtor has made false representations will not excuse the creditor's failure to demonstrate reasonable reliance. *See In re Mullet,* 817 F.2d 677, 679–80 (10th Cir.1987).

Schedule E of Galizia's financial statement listed an outstanding loan from Mellon Bank for which Galizia had pledged a boat and a trailer as security. He also listed an outstanding loan from Finance One for which he had pledged a motorcycle as security. (As has been indicated, Galizia pledged a Mach I boat and boat trailer and a Yamaha 200 Quadrunner as security for the loan from Seneca.) In addition, Galizia orally indicated to James Cox that he wished to borrow $48,000.00 from Seneca in order to consolidate other loans.

These considerations ought to have alerted Seneca to the necessity of at least searching the Prothonotary's records to determine whether Galizia had previously granted other lenders a security interest in the various items listed on his financial statement. A reasonably prudent lender would have done so.

Charles Parillo testified that it was the usual business practice of Seneca to conduct credit searches and UCC–1 searches. He was unable to state, however, whether Seneca had in fact done so in this case.

It must be concluded that any actual reliance by Seneca was unreasonable in light of these factors.

11 U.S.C. § 523(a)(6) provides as follows:
(a) A discharge under section 727 of this title does not discharge an individual debtor from any debt ...
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Seneca, if it is to prevail under this section, must prove that Galizia's conduct was both "willful" and "malicious". *See In re Ward, supra.* The meaning of "willful" is well-established and settled. Conduct is willful for purposes of this provision if it is deliberate or intentional. *See* S.Rep. No. 95–989, 95th Cong., 2d Sess. 79 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5865. The meaning of "malicious" is less settled and has been the subject of considerable difference of opinion. The United States Court of Appeals for the Third Circuit has not yet decided the meaning of this term. The best view, in this Court's opinion, is that conduct is malicious when it is done in conscious disregard of one's duties or without just cause or excuse. *See In re Ward, supra* at 729–30, *citing Wheeler v. Laudani,* 783 F.2d 610 (6th Cir.1986).

As has been noted, Galizia disposed of various items in which he had granted Seneca a security interest without prior notice to or permission from Seneca. Galizia sold the Mach I boat and the Shoreline trailer to his mother for $10,000.00 on July 15, 1975. He also traded in or sold the Yamaha 200 Quadrunner to Sanders Yamaha and gave away or sold much of his office equipment to unknown persons.

Seneca unquestionably has been injured as a result of Galizia's disposing of these items. It has been unable to recover any of them. Moreover, despite Galizia's insistence to the contrary, he did not apply the $10,000.00 he received from the sale of the boat and trailer against the loan at issue. There is nothing on the $10,000.00 check indicating that Galizia did anything but deposit it in his personal checking account. Moreover, Seneca's records do not reflect that these proceeds were applied against the loan. To the contrary, the record indicates Defendant used these funds for his personal purposes.

The evidence overwhelmingly established that this injury to Seneca by Galizia was willful in that Galizia intentionally disposed of the above items. By his own testimony, he sold the boat and the trailer, traded in or sold the Yamaha 200 Quadrunner, and gave away or sold the office equipment.

His actions in this regard were neither inadvertent nor accidental.

The evidence also establishes that this injury to Seneca by Galizia was malicious in that Galizia acted in conscious disregard of the fact that these items had been pledged as security for the loan. He acknowledged an understanding of the security interest concept and knew that he had granted Seneca a security interest in these items. His actions, in conscious disregard of his duties with regard to those pledged items, are classic examples of a debtor willfully and maliciously causing injury to another entity. Accordingly, this debt is not dischargeable.

An appropriate Order will be issued.