**In re Dennis P. STEINBRUNNER and Rebecca A. Steinbrunner, Debtors.**

**AMERICAN GENERAL FINANCE, INC., Plaintiff,**

**v.**

**Dennis P. STEINBRUNNER and Rebecca A. Steinbrunner, Defendants.**

**Bankruptcy No. 91–30968.
Adv. No. 91–3217.**

United States Bankruptcy Court, N.D. Ohio, W.D.

Nov. 30, 1992.

Richard J. Szczepaniak, Toledo, OH, for plaintiff.

Randy L. Reeves, Lima, OH, for defendants.

## OPINION AND ORDER EXCEPTING DEBT FROM DISCHARGE

**WALTER J. KRASNIEWSKI,** Bankruptcy Judge.

This matter came on for trial upon plaintiff's amended complaint to determine dischargeability pursuant to 11 U.S.C. § 523. Upon consideration of the evidence adduced at trial and the record herein, the court finds that the debt due plaintiff should be excepted from discharge and that judgment should be granted in favor of plaintiff and against defendants in the amount of $4,993.19, plus interest at the contract rate of 24.9% per annum, until paid in full.

### FACTS

On March 13, 1991, Debtors/defendants filed their voluntary petition under chapter 7 of title 11. Thereafter, on June 13, 1991, plaintiff American General Finance, Inc. filed the instant complaint against defendants Dennis P. and Rebecca A. Steinbrunner to determine dischargeability pursuant to 11 U.S.C. § 523. Plaintiff states that on May 11, 1989, defendants applied for a loan. In their application, plaintiff asserts that defendants failed to disclose a debt to Richard and Jodie Swaney, defendant Rebecca Steinbrunner's brother and sister in law. Based on the statements contained in that loan application, and defendants' representation that plaintiff would be granted a second mortgage on defendants' residence, plaintiff on May 18, 1989, loaned $5,873.26 to defendants. Subsequently, as a result of the first mortgagee's foreclosure action, plaintiff became aware that it held a third position on the residence, subordinate to the mortgage granted in favor of Richard and Jodie Swaney. The instant complaint requests that the debt due it from defendants be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2).

Ms. Carol Swords, employed as an office manager by plaintiff since 1978, testified that she is responsible for overseeing plaintiff's operations at her branch, including maintenance of records. She was familiar with defendants' loan as defendants first became customers of plaintiff in June, 1988, borrowing $529 to purchase a TV. After repayment of that obligation, defendants next contacted plaintiff in November, 1988 requesting $1,600 for "Christmas." This loan was closed on November 17, 1988 and an advance of $1,651.94 was given defendants. The unpaid balance on this loan was refinanced with the loan in issue.

Ms. Swords stated that she records conversations with her customers by handwritten notations in the customer's file. She testified that her notes reflect that she had a telephone conversation with defendant Rebecca Steinbrunner on May 8, 1989, wherein Mrs. Steinbrunner requested $10,000 for a loan consolidation and roof repairs. Information necessary for comple-

tion of the loan application was taken by Ms. Swords over the telephone. After inquiring about defendant's financial posture, including whether defendants owned or rented their home, the mortgage holders, the outstanding mortgages balances, and creditors, Ms. Swords informed Mrs. Steinbrunner that defendants would qualify for a loan of $5,000; her request for $10,000 would not be approved. Subsequent to that discussion, defendants' employment was verified, a credit report was obtained, Ms. Swords' assistant visited defendants' home to estimate the value thereof and a title search was requested. That title search revealed one outstanding mortgage on defendants' residence in favor of Mercer Savings Bank. Plaintiff's Exhibit 2.

On May 11, 1989, according to Ms. Swords, Mrs. Steinbrunner contacted her and requested that she process the $5,000 loan and use the proceeds to pay off the Penneys and Citizens charges, auto repairs and medical bills. Defendants signed the loan documents on May 18, 1989, after reviewing same and representing that the documents were accurate. Funds were subsequently released, on May 23, 1989, by a check payable to defendants and Penneys for $630.24, a check payable to defendants and Citizens Commercial for $800.00 and a check payable to defendants for $1,802.25. Plaintiff's Exhibit 3. A mortgage, executed by defendants on their residence, securing plaintiff's loan, was mailed for recording on May 18, 1989; that mortgage was received May 22, 1989 and recorded May 23, 1989. Plaintiff's Exhibit 5. Ms. Swords testified that she, at no time, was made aware of defendants' prior grant of a mortgage to Richard and Jodie Swaney. Ms. Swords opined that if she had been made aware of the existence of a prior mortgage, she, on behalf of plaintiff, would not have extended the loan to defendants.

Mrs. Steinbrunner stated that she and her husband owned their residence at the time of the loan from plaintiff; they purchased it in November, 1988. In order to obtain the loan for that purchase, her brother, Richard Swaney, loaned her $5,000 for use as a down payment. At the re-

quest of the mortgagee, Mercer Savings Bank, Mrs. Steinbrunner testified that her brother wrote to that institution stating that the $5,000 was a gift from him to Mrs. Steinbrunner. No promissory note was given in favor of her brother by defendants at that time; neither was any collateral extended to her brother. Defendants also did not cosign the loan Mr. Swaney obtained. However, defendants assumed responsibility for repayment of that monthly obligation, in the amount of $174.61, beginning December, 1988, in exchange for Mr. Swaney's loan to them.

Although she could not recall the exact date, Mrs. Steinbrunner stated that she contacted plaintiff, telephonically, in May, 1989, to apply for a loan. Mrs. Steinbrunner testified that at the time of the loan application, she was employed by Mercer Savings Bank in the loan department. She recalled that Ms. Swords asked her questions regarding her home, her creditors and the loan's purpose. Mrs. Steinbrunner asserted that she told Ms. Swords that the purpose of the loan was to payoff the $5,000 loan from her brother. She indicated that she and Jodie Swaney, her sister in law, discussed the loan; Mrs. Swaney told Mrs. Steinbrunner that the loan was causing problems between her and her husband. Additionally, Mrs. Steinbrunner asserted that when she informed Ms. Swords of the prior grant of a mortgage in favor of Mr. and Mrs. Swaney, that Ms. Swords stated that plaintiff's mortgage would "beat" Mr. and Mrs. Swaney's mortgage in filing. After reviewing the loan documents, Mrs. Steinbrunner executed same. Although defendants received a check in the amount of $1,802, Mrs. Steinbrunner stated that she did not use that amount to pay her brother as she wanted to pay the entire amount due him, not a portion.

Defendant Dennis Steinbrunner testified that his wife contacted plaintiff inquiring about the availability of a loan. He, however, was a party to the loan transaction and did review the loan documents prior to executing same.

Mrs. Jodie Swaney stated that her husband, Richard, is Mrs. Steinbrunner's

brother; they have been married for five years. Although she was not a party to her husband's loan transaction with defendants, Mrs. Swaney was familiar with her husband's loan and stated that he obtained same in order to assist defendants in purchasing a home. She was not sure when her husband obtained the loan. She was, however, aware that defendants had failed to make timely payments to the lending institution as second notices were received at her residence. She indicated that their attorney, Mr. Luth, was contacted at some point, after defendants' failure to make timely payments, and he prepared a mortgage; same was executed on May 13, 1989. Plaintiff's Exhibit 7.

Mr. Richard Swaney, Mrs. Steinbrunner's brother, testified that he had occasion, in November, 1988, to loan $5,000 to his sister; he presumed these funds would be used to purchase a home. He believed he obtained that unsecured loan from Citizens Commercial. He also stated that normally his wife signs notes he obtains. Mr. Swaney testified that Mrs. Steinbrunner agreed to repay the loan to Citizens Commercial in exchange for his loan of that same amount. He indicated that although he could not recall the date, sometime later he requested that defendants grant a mortgage in exchange for the $5,000.

## DISCUSSION

Plaintiff requests that the debt due it be excepted from discharge asserting that it extended credit to defendants, obtained by—

    (B) use of a statement in writing—

        (i) that is materially false;

        (ii) respecting the Debtors ... financial condition;

        (iii) on which the creditor to whom the Debtor is liable for such money, property, services, or credit reasonably relied; and

        (iv) that the Debtor caused to be made or published with intent to deceive....

11 U.S.C. § 523(a)(2)(B).

Plaintiff asserts that the loan application is a writing that is materially false in that defendants failed to disclose therein the indebtedness due Mr. and Mrs. Swaney or their grant of a mortgage in favor of Mr. and Mrs. Swaney.

A financial statement is "materially false" if it contains an important or substantial untruth. The omission, concealment, or understatement of a Debtor's material liabilities constitutes a "materially false" statement. A recurring guidepost used by courts has been whether the creditor would have made the loan had it known of Debtor's true financial condition.

*In re Galizia,* 108 B.R. 63, 67 (Bkrtcy. W.D.Pa.1989) (citations omitted). *See also In re Greene,* 96 B.R. 279 (9th Cir. BAP 1989) (materially false statement is one which paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit; such a statement can be premised upon inclusion of false information or the omission of information about Debtor's financial condition of the type affecting a creditor's decision making process); *In re Pretner,* 110 B.R. 942 (Bkrtcy.D.Colo.1990) (material falsity in a financial statement can be premised upon inclusion of false information or upon the omission of information about a Debtor's financial condition; a financial statement which misrepresents the Debtor's ownership of an asset or which does not disclose the true ownership of assets included within the Debtor's property is materially false (citation omitted)).

■ Defendants testified that they reviewed the loan application prior to executing same. *See supra* pp. 486–87. That application does not disclose any indebtedness due Mr. and Mrs. Swaney nor a mortgage in their favor. Plaintiff's Exhibit 1. The information used to complete the loan application was taken on May 11, 1989. *Id. See also supra* p. 486 (testimony of Ms. Swords). The mortgage in favor of Mr. and Mrs. Swaney was executed on May 13, 1989. Plaintiff's Exhibit 6. The mortgage in favor of plaintiff was executed on May 18, 1989. Plaintiff's Exhibit 5. Although defendants testified that they informed Ms.

Swords of the indebtedness due Mr. and Mrs. Swaney and the prior grant of a mortgage in their favor, the court is unconvinced by this testimony.

Initially, Ms. Swords credibly testified that she inquired of Mrs. Steinbrunner about the existence of any outstanding mortgages on defendants' residence. Her testimony was bolstered by reference to the notes kept by her in the normal course of business. These notes reflected the dates on which conversations with Mrs. Steinbrunner took place and the content of their discussions. Considering the demeanor of Ms. Swords, the court is persuaded that defendants failed to inform Ms. Swords of the debt to, or mortgage in favor of, Mr. and Mrs. Swaney. This conclusion is further supported by defendants' failure to use the $1,800 they received to pay Mr. Swaney on the outstanding indebtedness. *See supra* pp. 486–87. Although Mrs. Steinbrunner stated that she desired to pay Mr. Swaney in full, this amount could have been applied to that outstanding balance. Additionally, defendants, before executing the loan documents, could have corrected the documents to reflect the grant of the mortgage in favor of Mr. and Mrs. Swaney, five days before execution of those loan documents; no notation, handwritten or otherwise, was made on the loan documents. Plaintiff's Exhibit 1. Finally, if it was Ms. Swords' intention to "beat" Mr. and Mrs. Swaney's mortgage, she, no doubt, would have hand delivered, or otherwise expedited delivery of, the mortgage for recording; in fact, she mailed the mortgage. *See supra* p. 486. Despite defendants' testimony to the contrary, the court finds that defendants omitted, or indeed concealed, a material liability.

Ms. Swords testified that had she known of the indebtedness due Mr. and Mrs. Swaney, the loan would not have been extended by plaintiff for several reasons. First, plaintiff's policy did not permit it to loan monies, taking less than a second mortgage position; here, plaintiff received a third position. Second, plaintiff's policy included that a customer, have a surplus budget of $700 for a two member family and $75 for each member thereafter, in order to obtain a loan; here, application of the indebtedness due Mr. and Mrs. Swaney would have caused that surplus to be less than $850 (defendants have two children). Finally, an unsecured loan would not have been extended by plaintiff to defendants as defendants' prior payment history would not have supported such a loan. The court finds that defendants' loan application was materially false.

■ Plaintiff must next establish that it reasonably relied on defendants' written statement.

The reasonableness of such reliance is to be judged by an objective standard—i.e., that degree of care which would be exercised by a reasonably cautious person in an average business transaction under similar circumstances.

\* \* \* \* \* \*

The requirement of reasonableness places a measure of responsibility upon the creditor to ensure that there is some basis for relying upon the Debtor's representations. Reasonableness is to be evaluated in accordance with the particular facts and circumstances of a given case. Even a strong showing that the Debtor has made false representations will not excuse the creditors' failure to demonstrate reasonable reliance.

*Galizia,* 108 B.R. at 68, 69 (citations omitted). Furthermore, a creditor must investigate creditworthiness and ferret out ordinary credit information. *See In re Ward,* 857 F.2d 1082 (6th Cir.1988).

Ms. Swords testified that defendants' employment was verified, a credit report was obtained and a title search conducted. *See supra* p. 486 and Plaintiff's Exhibit 2. The court finds these actions to be reasonable. Plaintiff exercised caution in verifying information prior to the authorization of the loan. Furthermore, the title search, obviously, did not reveal the second mortgage granted in favor of Mr. and Mrs. Swaney as that search was ordered three days after defendants' grant of same; two days before the loan closing. Plaintiff's Exhibit 2 (May 16, 1989). Plaintiff has carried its burden on this element.

■ Finally, plaintiff must demonstrate that defendants intended to deceive.

The standard for determining intent to deceive includes recklessness, indifference, and disregard for accuracy. *In re Martin,* 761 F.2d 1163, 1167 (6th Cir.1985). In determining defendants' intent in publishing the statement, plaintiff may present circumstantial evidence from which defendants' intent may be inferred. *Galizia,* 108 B.R. at 68. *See also In re Rental Journal, Inc.,* 111 B.R. 1012, 1015 (Bkrtcy. S.D.Fla.1989) (court may find deceit and fraudulent intent by logically inferring from the totality of the circumstances). Defendant may not, then, simply assert his honest intent, in overcoming this evidence. *Galizia,* 108 B.R. at 68 (citation omitted).

Plaintiff's counsel opined, in closing argument, that the loan transaction was "orchestrated" to benefit Mr. and Mrs. Swaney, allowing them to obtain a second position on the residence, without disclosing that mortgage to plaintiff. The court concurs. Again, the court is unconvinced by defendants' testimony that they disclosed the debt or mortgage. Minimally, defendants' conduct evidences a disregard for the accuracy of the loan documents; they failed to correct those documents to accurately reflect that debt or mortgage. Furthermore, Mrs. Steinbrunner, at the time of the loan, was employed in the loan department of a bank; she, no doubt, was aware of the importance of a customer's accurate disclosure of financial information. Thus, defendants' conduct supports this court's conclusion that they intended to deceive, either as a result of actual intent, or as a result of recklessness, indifference or disregard for accuracy. Plaintiff has carried its burden of proof, establishing an exception to discharge.

The court must now determine that amount to be excepted from discharge. Plaintiff's counsel, in closing argument, stated that the balance on the debt due plaintiff, as of the date of defendants' petition, was $4,993.19; the contract rate of interest is 24.9% per annum. (The court notes that Plaintiff's Exhibit 4 reflects an A.P.R. of 25.76%.) Having found that the debt is excepted from discharge, judgment in the amount of $4,993.19, representing the debt due at the petition, should be granted in favor of plaintiff.

Furthermore, interest on that debt, at the contract rate should be imposed. *Matter of Jordan,* 927 F.2d 221, 228 (5th Cir. 1991) (authority supports our decision to treat as exempt from discharge the interest to which creditor is entitled under state law (citations omitted)); *In re Holston,* 47 B.R. 103, 109 (Bkrtcy.M.D.La.1985) (with respect to the sum not discharged, plaintiff is entitled to recover interest in accordance with its contract); *In re Foster,* 38 B.R. 639, 640 (Bkrtcy.M.D.Tenn.1984) (interest calculated at contract rate, prejudgment and postjudgment, as plaintiff should recover a judgment measured by the benefit-of-the-bargain rule). *See also Martin, supra,* (creditor awarded costs and attorney's fees as provided in contract).

In light of the foregoing, it is therefore

ORDERED that the debt due plaintiff American General Finance, Inc. from Debtors/defendants Dennis P. Steinbrunner and Rebecca A. Steinbrunner be, and hereby is, excepted from discharge. It is further

ORDERED that plaintiff American General Finance, Inc. be, and hereby is, granted judgment against Debtors/defendants Dennis P. Steinbrunner and Rebecca A. Steinbrunner in the amount of $4,993.19 plus interest at the rate of 24.9% per annum, commencing after March 13, 1991.