**In re James Larry JOHNSON, Debtor.**

**Bankruptcy No. 96–32909.**

United States Bankruptcy Court,
W.D. Tennessee.

July 17, 1997.

Lawrence W. White, Friedman, Sissman and Heaton, P.C., Memphis, TN, for Debtor.

Patrick Johnson, Jr., Memphis, TN, for Creditor.

Charlie R. Ashford, Memphis, TN, Chapter 13 Trustee.

## MEMORANDUM OPINION AND ORDER INVOKING ROOKER–FELDMAN DOCTRINE AND DENYING DEBTOR'S OBJECTION TO CLAIM OF PATSY YARBRO

WILLIAM H. BROWN, Bankruptcy Judge.

The debtor filed his chapter 13 case on October 3, 1996. An order confirming the debtor's plan was entered on November 20, 1996; however, the debtor filed an objection to the claim of his former spouse, Patsy Lorean Johnson Yarbro. Ms. Yarbro had filed a claim for obligations arising out of the parties' divorce, and Mr. Johnson had included his former spouse as an unsecured creditor in his plan to receive far less than the $287,685.41 claimed by the creditor. The parties have submitted memoranda and have filed as an exhibit copies of certain pleadings from the parties' divorce. By consent of counsel for the parties, the issues of the preclusive effect of the state court's orders have been submitted to this court. Ms. Yarbro filed a protective adversary proceeding, number 97–0484, seeking to revoke the confirmation of the debtor's plan and pleading that the debtor's case and plan were filed in bad faith. This proceeding was filed in order to prevent the running of a statutory bar to its filing, and counsel for the parties agreed that no action would be taken in that proceeding pending this court's ruling upon the debtor's objection to the claim of Ms. Yarbro.

## DISCUSSION OF EFFECT OF PRIOR STATE COURT ORDERS

It is the debtor's contention that Ms. Yarbro's claim is limited to the value of stock that she was awarded in the divorce decree, as of December 19, 1986, plus Tennessee's statutory interest from that date, and less a credit for a lump sum amount paid by the debtor to his former spouse. It is the creditor's contention that she is entitled to the value of that stock at today's value as if she had actually received the stock and enjoyed its appreciation. This dispute arises from the following provision in the final decree of divorce that was signed by Shelby County, Tennessee, Chancellor D.J. Alissandratos on December 19, 1986:

8. The Plaintiff Patsy Lorean Johnson be and she is hereby awarded the exclusive ownership of a one half (1/2) interest in any and all pension funds, profit sharing accounts, savings or stock accounts held in the name of or for the use and benefit of the defendant, James Larry Johnson, by his employer, Buckeye Cellulose Company, any of its agents, fiduciaries or depositories and said interest shall be vested and determined as of December 15, 1986. And said interest shall be paid to her at the earliest date allowable; that any of defendants interest in and to said one-half (1/2) of said fund is divested out of defendant and vested in plaintiff and any interest of the plaintiff in the balance is divested out of her and vested in the defendant.

The divorce decree and other orders from the divorce case were submitted to this court by stipulation as Exhibit 1.

Ms. Yarbro claims to have been awarded 533 shares of Proctor and Gamble Stock as a result of this provision, representing one half of the stock owned by the debtor through his profit sharing account as of December 15, 1986. The debtor interprets paragraph 8 of the divorce decree to have awarded his former spouse only a one half interest in the value of the stock on that date. In what is usually a fortunate occurrence, the stock has gained in value significantly. Unfortunately, no one notified the debtor's pension plan administrator of the award to Ms. Johnson, so as to make the divorce decree a Qualified Domestic Relations Order, as is required by 26 U.S.C. § 414(p) if such an order is to be binding upon the plan administrator. As a result of this failure, the plan administrator distributed the stock and cash in Mr. Johnson's ERISA-qualified account to Mr. Johnson upon his request on or about May 23, 1989. Ms. Yarbro had no knowledge of this withdrawal until a later time.

The debtor argues that Tennessee law controls both the method for calculation of Ms. Yarbro's claim and the issue of her possible laches. The debtor relies upon *Kendrick v. Kendrick*, 902 S.W.2d 918 (Tenn.App.1994), as authority that the divorce decree's language dictates that the Chancellor did not retain jurisdiction to divide the stock in the future and that the present value method of valuation must be used as of the decree's date of vesting, December 15, 1986.

Subsequent to the entry of the divorce decree, the Chancellor found Mr. Johnson in civil contempt and ordered him incarcerated until he paid $201,131.00 into the Chancery Court. After a hearing on September 17, 1996, the Chancellor entered an order that contains numerous findings, including: 1) Mr. Johnson was in contempt; 2) when the Proctor and Gamble stock was distributed to Mr. Johnson on March 16, 1993, Ms. Yarbro was entitled to ownership of 2,135.208 shares; and 3) as of September 17, 1996, those shares had a value of $93.00 per share for a total of $198,574.34, plus undetermined interest and dividend accruals. The Chancellor also referred to a special master for a report on the interest and dividend questions. Apparently, the debtor obtained release from incarceration by posting a bond for $1,000.00. *See* order of September 27, 1996 signed by Chancellor Floyd Peete. Chancellor Alissandratos on October 29, 1996 ordered that Mr. Johnson pay Ms. Yarbro the $70,000.00 on deposit in Mr. Johnson's account at Morgan Keegan & Company and that he make a full accounting of all funds received from the distribution of his Proctor and Gamble pension and profit sharing account. Counsel for the parties advised this court that Mr. Johnson had appealed the Chancellor's order or orders to the Tennessee Court of Appeals, and that appeal is pending.

■ Ms. Yarbro argues that the debtor is barred by collateral estoppel from re-litigating in the bankruptcy court the findings of the Chancellor. This court concludes that the more appropriate authority that prevents it from consideration of the Chancellor's findings and orders is the *Rooker–Feldman* Doctrine. The latter doctrine arose from two Supreme Court decisions: *Rooker v. Fidelity Trust Company*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Citing the predecessor to 28 U.S.C. § 1257, the Court in *Rooker* held that only the Supreme Court could hear proceedings to reverse or modify a state court judgment for alleged federal constitutional errors and only then after the state appellate process had been exhausted. The United States district court lacked appellate jurisdiction in *Rooker* to hear the plaintiff's attack on the state appellate court's final order. Similarly, in *Feldman* the Supreme Court held that the United States district court lacked subject matter jurisdiction to hear the equivalent to appellate challenges to the decision made by the highest appellate court in the District of Columbia. Only the Supreme Court has that jurisdiction. 28 U.S.C. § 1257. Under the *Rooker–Feldman* Doctrine, the federal trial courts have only original subject matter, and not appellate, jurisdiction. Those courts, including the bankruptcy court as an adjunct to the district court, may not entertain appellate review of a state court judgment.

The debtor here was a party to the state court proceedings that resulted in Chancellor Alissandratos's findings and orders. The debtor in this chapter 13 case seeks what would amount to an appellate review of the Chancellor's orders. As the debtor argues, Tennessee law controls whether the Chancellor's findings were correct and whether the Chancellor correctly applied applicable Tennessee law. The debtor has appealed the Chancellor's order(s) to the appropriate Tennessee Court of Appeals, and there is no justification for the bankruptcy court to interfere in that appellate process. Certainly, this court should not act as an appellate court, nor should this court presume that it

can better decide the legal issues than could the Tennessee courts.

■ The *Rooker–Feldman* Doctrine is closely related to the concepts of preclusion; however, the Doctrine "is broader than claim and issue preclusion because it does not depend on a final judgment on the merits." *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 n. 1 (8th Cir.1995). Several courts have recognized the applicability of the *Rooker–Feldman* Doctrine to bankruptcy courts, including: *Goetzman v. Agribank, FCB (In re Goetzman)*, 91 F.3d 1173 (8th Cir.1996)(holding that the bankruptcy court lacked subject matter jurisdiction to determine the amount of a debt that had been previously determined in state trial court); *Besing v. Hawthorne (In re Besing)*, 981 F.2d 1488, 1496 (5th Cir.1993)("The Bankruptcy Code was not intended to give litigants a second chance to challenge a state court judgment nor did it intend for the Bankruptcy Court to serve as an appellate court.")(quoting *In re G & R Mfg. Co.*, 91 B.R. 991, 994 (Bankr.M.D.Fla.1988)); *In re Audre, Inc.*, 202 B.R. 490 (Bankr.S.D.Cal. 1996)(the claims allowance or objection process in bankruptcy could not be used to collaterally attack a prior state court judgment); *Morrow v. Torrance Bank (In re Morrow)*, 189 B.R. 793 (Bankr.C.D.Cal. 1995)(the bankruptcy court lacked subject matter jurisdiction to essentially review a state court judgment). *See generally*, William A. Frazell, State Courts and Bankruptcy—Applying the *Rooker–Feldman* Doctrine, XVI AMERICAN BANKRUPTCY INSTITUTE JOURNAL 12 (April 1997). Most recently, the Third Circuit has addressed the issue in *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87 (3d Cir.1997). In *Wilson*, the debtor was sued in state court for malicious prosecution and a judgment was entered. The *Wilson* Court held that the *Rooker–Feldman* Doctrine prevented the debtor from re-litigating the adverse trial court judgment in the bankruptcy court, and the automatic stay was lifted to allow the debtor to proceed with her appeal.

Mr. Johnson has filed an appeal with the Tennessee Court of Appeals, and to the extent necessary, this court will sua sponte lift

the automatic stay to allow litigation in the Tennessee courts, both trial and appellate, to continue. That is the appropriate means for these parties to resolve their disputes about the amount of debt owed to Ms. Yarbro.

IT IS THEREFORE ORDERED, based upon the foregoing discussion, that this court is barred by the *Rooker–Feldman* Doctrine from hearing the debtor's objection to the amount of the claim filed by Ms. Yarbro. That claim has been allowed in the amount filed by an administrative order entered on February 20, 1997, and that order will stand until the debtor is successful in his appeal pending in the Tennessee courts. The debtor's objection to the claim is denied. The automatic stay is lifted to allow these parties to proceed with any actions in the Tennessee courts concerning the amount of the debt owing to Ms. Yarbro. Moreover, the Chancellor may proceed with any contempt hearings.

As a result of this Order, the adversary proceeding filed by Ms. Yarbro may be partially mooted; however, IT IS FURTHER ORDERED that a status conference on the adversary proceeding will be held in Courtroom 680, 200 Jefferson Avenue, Memphis, Tennessee, on Wednesday, August 13, 1997, at 9:59 a.m.