**In re Adam Ike HAYES, Debtor.**

**Donna Ellis Hayes, Plaintiff,**

v.

**Adam Ike Hayes, Defendant.**

**Bankruptcy No. 98–24717–L.
Adversary No. 98–0745.**

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

June 2, 1999.

Matthew M. Maddox, Huntingdon, TN, for plaintiff.

B. David Sweeney, Memphis, TN, for defendant.

## MEMORANDUM

JENNIE D. LATTA, Bankruptcy Judge.

THIS ADVERSARY PROCEEDING was tried April 14, 1999, upon the Complaint to Determine Dischargeability of Debt filed by the Plaintiff on July 6, 1998, pursuant to 11 U.S.C. §§ 523(a)(5) and 523(a)(15). The complaint raises the issue of whether the Defendant's obligation to assume sole responsibility for paying the couple's joint credit card liabilities is nondischargeable either as a spousal support obligation or as a marital debt not in the nature of support. The Defendant contends that the Marital Dissolution Agreement that created the subject obligation is invalid because the Defendant was not advised by Plaintiff's attorney to seek independent representation.

In the alternative, the Defendant contends that the obligation to assume the parties' credit card obligations is not in the nature of support, and that he does not have the ability to pay the debts or that the benefit to him of discharging these debts would outweigh the detrimental consequences to the Plaintiff if the debts are discharged.

For the reasons set forth below, the Court concludes that the obligation of the Defendant to the Plaintiff constitutes nondischargeable spousal support.

### I.

The Plaintiff and Defendant were married June 22, 1995, and divorced December 18, 1996. They have no children. The Marital Dissolution Agreement dated October 14, 1996, and approved and incorporated into a judgment dated December 18, 1996, by the Chancery Court of Carroll County, Tennessee, created the following obligation:

5. Second Party [Adam Ike Hayes] assumes and is solely responsible for the debt on the following credit cards: City Bank VISA—approximate balance of $3,000.00; MBNA VISA—approximate balance of $3,500.00; NationsBank VISA—approximate balance of $4,000.00; Capital 1 VISA—approximate balance of $10,000.00; Bank of Boston—approximate balance of $3,500.00. Second Party shall hold First Party [Donna

Lachelle Hayes] harmless from the payment of the debts on the credit cards set out in the preceding sentence.

It is contemplated by the parties that Second Party will legally assume the responsibility of the payments for the credit cards as determined by the various credit card companies. Second Party will execute such documents as are necessary, and when called upon, so as to relieve First Party from any legal liability on any of the five (5) credit cards.

Second Party covenants with First Party that he will pay the monthly payments on each of the five (5) above set out credit cards according to the tenor of each obligation so as to protect First Party from any personal liability. This covenant is to remain in effect as long as First Party may be, or is, liable for any payment on the credit cards. It is further agreed by the parties that the minimum payment required by the credit card companies shall be treated as spousal support for which Second Party will receive credit for payments made to the credit card companies. All rights to enforce spousal support payments shall remain with First party so long as First Party may be, or is, liable on any of the credit cards.

During such time as First Party may be, or is, liable on any of the credit cards listed hereinabove, Second Party will do nothing to adversely affect the rights of First Party by way of extension of any obligation, assignment to creditors or bankruptcy proceedings. The foregoing covenants of protection shall continue only so long as First Party has any contingent liability of any nature regarding the credit cards.

Marital Dissolution Agreement, October 14, 1996, Trial Ex. 1. The Plaintiff testified that the Marital Dissolution Agreement was prepared by Mr. Kent Jones. She further testified that the Defendant chose to use the same attorney even though she affirmatively told him that he could get his own attorney. Upon questioning by the Plaintiff's attorney, the Defendant testified that he signed the Marital Dissolution Agreement at Mr. Jones' office after reading over it. He testified that he understood that he was undertaking to pay all the credit card bills. He further testified that he did not consult an attorney at the time he signed the Marital Dissolution Agreement because he could not afford one, but that he later consulted with Mr. John Everett Williams. Later, upon questioning by his own attorney, the Defendant testified that Mr. Jones refused to see him, and that the Carroll County Chancellor never advised him to get an attorney.

Approximately one year after the entry of the Judgment in the divorce case, the Plaintiff filed a Petition for Contempt against the Defendant as the result of his failure to pay her the sums called for under the Marital Dissolution Agreement. This resulted in the entry of a stipulated order on December 8, 1997 [Trial Ex. 2], awarding judgment to the Plaintiff in the amount of $24,000.00 which sum was said to represent the balance of the credit card obligations described in the Marital Dissolution Agreement. That order further provided that neither party should change the billing address on any credit card account which was the subject of the Marital Dissolution Agreement, and further that the Defendant should pay to the Plaintiff the minimum monthly payment shown on each credit card statement as received at least ten days prior to the due date for the payment. The parties were ordered not to make additional charges on any of the subject accounts. The Defendant was further ordered to make a good faith effort to refinance the outstanding obligations in order to remove the Plaintiff's name from the accounts. The Plaintiff testified that during the course of the contempt proceedings, the Defendant was represented by attorney Robert T. Keeton, but never raised the issue of the validity of the Marital Dissolution Agreement and never questioned that the assumption of credit card

debts was intended to be anything other than spousal support.

On January 27, 1997, there were additional proceedings before the Carroll County Chancellor resulting in the entry of a stipulated. Order dated February 11, 1998 [Trial Ex. 3]. In this order, the Defendant was ordered to remit to the Plaintiff a minimum of $250.00 on the first and fifteenth days of each month until the credit card obligations were paid in full. The Plaintiff was ordered to provide to the Defendant each quarter commencing April 15, 1998, copies of all credit card statements received by her and all checks issued by her as payment on the credit card obligations. The case was continued on the Chancellor's docket until April 28, 1998. The Defendant was ordered to appear on that date in the event he failed to comply with the terms of the Marital Dissolution Agreement as modified by the subsequent orders.

The Defendant filed his voluntary Chapter 7 petition on April 3, 1998.

## II.

■ The Court will first consider the nature and amount of the obligation at issue. The Plaintiff testified that the credit card obligations resulted from cash advances used to finance operating shortfalls at Hayes Processing, a meat processing business owned by the Defendant; repairs to the Defendant's truck of approximately $5,000.00; and other miscellaneous personal items. The Defendant did not dispute this testimony. The Marital Dissolution Agreement and the Plaintiff's testimony indicate that it was the parties' intent that the Defendant refinance these obligations or otherwise relieve the Plaintiff of liability for these debts. Mr. Hayes never successfully did so.

The amount of debt owed was approximately $24,000.00 in December of 1997. At that time, the parties attempted to reduce the debt to judgment in that amount. *See* Order dated December 8, 1997 (Trial Ex. 2). A second order, dated February 11, 1998, sets forth a payment schedule of a minimum of $250.00 on the first and fifteenth days of every month commencing February 15, 1998, "until all credit card balances, with interest and charges as the balances accrue ... are paid in full." (Trial Ex. 3). This order indicates the parties' intent that the Defendant's obligation continue to be measured by the outstanding credit card obligations. While these orders at first glance appear to be inconsistent, they can be reconciled if one assumes that interest on the $24,000.00 judgment accrues at the contract rate. This view is consistent with Tennessee Code Annotated § 47–14–121, which provides generally for post-judgment interest at the rate of ten percent per annum except "where a judgment is based on a note, contract, or other writing fixing a rate of interest ... the judgment shall bear interest at the rate so fixed." The obligation of the Defendant is based upon the writings consisting of the credit card statements and the Marital Dissolution Agreement and subsequent orders. Pursuant to the Tennessee statute, it is appropriate that the obligation of the Defendant continue to accrue interest at the contract rates even though reduced to judgment. *See American Gen. Fin. v. Steinbrunner (In re Steinbrunner)*, 149 B.R. 484, 489 (Bankr.N.D.Ohio 1992) (contract interest rate imposed on nondischargeable debt); *In re Foster*, 38 B.R. 639, 640 (Bankr.M.D.Tenn.1984) (When a debt is excepted from discharge, plaintiff should recover judgment measured by the "benefit-of-the-bargain rule," which would include the rate of interest bargained for by the parties.). The Plaintiff testified that the current outstanding balances of the subject credit card obligations is $27,249.80. This Court's role is to determine whether that obligation is or is not dischargeable in bankruptcy.

## III.

■ With respect to the issue of whether the Defendant's obligation is discharge-

able in bankruptcy, the Court will first consider the Defendant's contention that the Marital Dissolution Agreement is invalid because he was not represented by counsel when he signed it. The Defendant's argument consists of two points. First, the Defendant argues that Disciplinary Rule 7–104(2) of the Tennessee Code of Professional Responsibility prohibits the giving of legal advice to an opposing party, other than advice to secure counsel. From this, Defendant argues that "[c]ounsel should recommend that each party have independent legal advice." The Defendant seems to construe DR 7–104(2) to create an affirmative duty on the part of an attorney to an unrepresented opposing party to recommend the securing of independent legal advice. The Defendant cites no authority to support his position.

Second, the Defendant argues that the terms of the Marital Dissolution Agreement were vague, that the "agreement is overreaching on its face and would be grounds for the final decree to be set aside pursuant to Rule 60 of the Tennessee Rules of Civil Procedure, thus rendering the marital dissolution agreement null and void." The Defendant cites no case authority for this statement either, but his statement is nevertheless enlightening in that it points out the defect in his position. That is, if there were some flaw in the Marital Dissolution Agreement, either because of the Defendant's lack of independent representation or because the agreement is overreaching, the Defendant's remedy, if any, lies with the courts of the State of Tennessee, not with this United States Bankruptcy Court. The Defendant has never sought to have the final judgment set aside by the courts of the State of Tennessee, and apparently has never raised these issues prior to the filing of this Adversary Proceeding.

██ "It is a principal of first importance that the federal courts are courts of limited jurisdiction." WRIGHT, MILLER &

COOPER, FEDERAL PRACTICE AND PROCEDURE § 3522 (West 1984). Jurisdiction over this Adversary Proceeding is established by 28 U.S.C. § 1334(b) which states in pertinent part, "... the district courts [1] shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The Rooker–Feldman Doctrine states that district courts do not have subject matter jurisdiction over challenges to state court decisions in judicial proceedings. *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir.1995) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983)). The only court with jurisdiction to review decisions of state courts is the United States Supreme Court. *Id. (citing Feldman*, 460 U.S. at 486, 103 S.Ct. at 1316); see generally the discussion of the Rooker–Feldman Doctrine and its application to the bankruptcy courts at *In re Johnson*, 210 B.R. 1004, 1006 (Bankr.W.D.Tenn.1997) (Brown, J.).

The Defendant in effect seeks appellate review of the final judgment and subsequent orders of the Carroll County Chancellor. The jurisdiction of the bankruptcy court in this Adversary Proceeding is limited to a determination of the dischargeability of the obligations established by the Chancellor. The bankruptcy courts, as units of the federal district courts, have no appellate jurisdiction over decisions of the state courts. The Defendant's attacks upon the validity of the Marital Dissolution Agreement in this forum fail for lack of subject matter jurisdiction.

## IV.

██ The Court next considers whether the Defendant's obligation to assume sole responsibility for the parties' joint credit

---

1. The bankruptcy judges in each judicial district constitute a unit of the district court known as the bankruptcy court for that district. 28 U.S.C. § 151.

card obligations is in the nature of a spousal support obligation and therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(5). That section provides in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

\* \* \* \* \* \*

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5).

▇▇ Exceptions to discharge are to be narrowly construed. *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). The party objecting to discharge carries the burden of proving by a preponderance of the evidence that a debt is nondischargeable. *Id.* Nevertheless, "the terms 'alimony' and 'support' are given a broad construction to promote the Congressional policy that favors enforcement of obligations for spousal and child support." 4 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 523.11[2], p. 523.78 (15th ed. rev.1997). "Congressional policy concerning § 523(a)(5) 'has always been to ensure that genuine support obligations would not be dischargeable.'" *Jones v. Jones (In re Jones),* 9 F.3d 878, 880 (10th Cir.1993) (quoting *Shine v. Shine,* 802 F.2d 583, 588 (1st Cir.1986)). "Section 523(a)(5) represents Congress' resolution of the conflict between the discharge of obligations al-

lowed by the bankruptcy laws and the need to ensure necessary financial support for the divorced spouse and children of the debtor." *Long v. Calhoun (In re Calhoun),* 715 F.2d 1103, 1106 (6th Cir.1983). The debtor's duty to support his or her family takes precedence over the debtor's right to receive a discharge.

▇▇ In *Calhoun* the Sixth Circuit set forth a framework for determining when an agreement to assume joint debts creates a nondischargeable obligation to provide support. The court set forth the following factors to be considered in making that determination:

(1) whether there was an intent to create a support obligation;

(2) whether the obligation has the effect of providing necessary support;

(3) if the first two steps are satisfied, whether the amount of the support represented by the obligation is not excessive; and if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purpose of federal bankruptcy law.

*Id.* at 1109–10; *see also Fitzgerald v. Fitzgerald (In re Fitzgerald),* 9 F.3d 517 (6th Cir.1993).

Following its decision in *Calhoun,* the Sixth Circuit returned to the issue of the dischargeability of marital debts in the case of *Fitzgerald v. Fitzgerald (In re Fitzgerald),* 9 F.3d 517 (6th Cir.1993). The court acknowledged the confusion that had arisen concerning the application of its "present needs" test to support obligations other than assumptions of debt. *Id.* at 520. The court stated that "*Calhoun* was not intended to intrude into the states' traditional authority over domestic relations and [sic] the risk of injustice to the non-debtor spouse or children." *Id.* at 521. In *Fitzgerald* the question before the court was "whether something denominated as alimony [was] really alimony and not, for example, a property settlement in disguise." *Id.*

■ Most recently, the Sixth Circuit has considered the dischargeability of marital debts in *In re Sorah*, 163 F.3d 397 (6th Cir.1998). The court reiterated the deference to be given to a state court's award of alimony that is labeled and structured as such. The court directs that,

> In determining whether an award is actually support, the bankruptcy court should first consider whether it "quacks" like a duck. Specifically, the court should look to the traditional state law indicia that are consistent with a support obligation. These include, but are not necessarily limited to, (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits. An award that is designated as support by the state court and that has the above indicia of a support obligation (along with others that the state support statute considers) should be conclusively presumed to be support. A non-debtor spouse who demonstrates that these indicia are present has satisfied his or her burden of proving that the obligation constitutes support within the meaning of § 523, and is thus nondischargeable.... The burden then shifts to the debtor spouse to demonstrate that although the obligation is of the type that may not be discharged in bankruptcy, its amount is unreasonable in light of the debtor spouse's financial circumstances.

*Sorah*, 163 F.3d at 401.

Two of the three *Sorah* factors are present in this case. First, and most importantly, the obligation to pay the parties' credit card obligations is labeled spousal support in the Marital Dissolution Agreement. Second, although the Marital Dissolution Agreement initially contemplated that the Defendant would make payments to the credit card companies directly, this obligation was subsequently modified in the orders dated December 8, 1997, and February 11, 1998. Pursuant to those orders, the Defendant is to make payments directly to the Plaintiff of $250.00 on the first and fifteenth days of each month until the credit card obligations are fully paid. The third *Sorah* factor, that the payments be contingent upon such events as death, remarriage, or eligibility for Social Security benefits, is not present. Pursuant to *Sorah*, however, in determining whether the subject obligation is in the nature of support, this Court may also weigh other factors the Tennessee support statute considers.

The Plaintiff testified that at the time of the divorce she was not employed. She had been a nursing student at the University of Tennessee at Martin, but had sustained a work-related back injury while working at the Developmental Center at Camden, Tennessee, which prevented her from pursuing a career in nursing. The Plaintiff testified that after her injury and separation from the Defendant, she lived with her parents, changed her major to education, and received her degree in May of 1997. She is now employed by the Benton County Board of Education. The Plaintiff further testified that she and the Defendant discussed her need for support before entering into the Marital Dissolution Agreement.

From this testimony, which was not disputed by the Defendant, the Court concludes that the parties intended that the Defendant would provide the Plaintiff temporary support while she obtained the necessary education to support herself. The provision of temporary rehabilitative support is thoroughly consistent with the Tennessee statute providing for spousal support. The State of Tennessee has established a presumption in favor of rehabilitation of a financially disadvantaged spouse, rather than the more traditional periodic alimony that ends upon the death or remarriage of the recipient spouse. *See Tenn.Code Ann. § 36-5-101(d).* Because the Tennessee statute favors reha-

bilitative alimony, the Court does not believe that the absence of the third *Sorah* factor is fatal to the Plaintiff's position. Rather, the Court concludes that the Plaintiff has conclusively established that the subject obligation is in the nature of support.

## V.

The *Sorah* court, relying upon the third prong of the *Calhoun* test, states that a support award "is still dischargeable to the extent that it exceeds the amount that the debtor spouse is reasonably able to pay." *Sorah*, 163 F.3d at 402. As of this writing, there are no reported decisions applying the *Sorah* decision. Inability to pay is an affirmative defense in Section 523(a)(15) cases which expressly applies only to debts "not of a kind described in paragraph (5) [11 U.S.C. § 523(a)(5) ]." 11 U.S.C. § 523(a)(15). The Bankruptcy Reform Act of 1994, which added section 523(a)(15) to the Bankruptcy Code did not apply in the *Sorah* case which was filed prior to the amendment. *Sorah*, 163 F.3d at 401. Because section 523(a)(15) makes available the inability to pay defense only in connection with those debts which are not support debts, this Court respectfully questions whether the third prong of *Calhoun* survived the enactment of the 1994 amendment. Being bound by the precedent of *Calhoun* and *Sorah*, however, the Court will consider the reasonableness of the award.

It is not clear whether the Court is to determine the Defendant's ability to pay as of the date of the Marital Dissolution Agreement or as of the date of trial in the bankruptcy court. It is clear that the Defendant bears the burden of proving that the award was (or is) unreasonable.

The Defendant testified that at the time of his divorce he was the owner of Hayes Processing, a meat processing plant, which had experienced an operating loss of $5,000.00. He received draws from the business to pay his living expenses. He was indebted to various banks for loans related to his business, as well as loans for a car and truck. The Defendant provided no more specific information concerning his income and expenses at the time of the divorce. The Defendant has failed to carry the burden of proving that the award of spousal support was unreasonable in light of his ability to pay at the time of the divorce.

In the alternative, the Court looks to the Defendant's present circumstances to determine whether the award is unreasonable now. The Court heard testimony from the Defendant and his present wife concerning their financial condition. The Defendant is remarried, and has a step-daughter and an infant son. The Defendant is employed by Burlington Northern–Sante Fe Railroad as a conductor/switchman. His net income from that position is $2,200.00 per month. The Defendant explained that within the next five years he will have to complete his education to become an engineer, with a resulting increase in pay. The Defendant's wife is a hair stylist who brings home approximately $380.00 per week (or $1,634.00 per month [2]). Mrs. Hayes also receives child support in the amount of $345.00 per month. The couple's monthly net income is thus approximately $4,179.00. Mrs. Hayes testified that the monthly household expenses are as follows:

| | |
|---|---|
| Rent | 700.00 |
| Car payment | 473.13 |
| Truck payment | 453.34 |
| Automobile insurance | 141.66 |
| Cable television | 48.00 |
| Bank fees | 8.00 |
| Postage | 15.00 |
| Memberships/licenses | 12.00 |
| Childcare | 320.00 |
| Lunches | 30.00 |

**2.** The Court has multiplied Mrs. Hayes' estimate of earnings per week by 4.3 weeks per month to derive this monthly income figure.

| | |
|---|---|
| Mr. Hayes' lunches | 215.00 [3] |
| Utilities | 130.00 |
| Telephone (including mobile) | 180.00 |
| Daughter's expenses (cheerleading, dance, book clubs) | 100.00 |
| Car and home maintenance | 200.00 |
| Gasoline | 200.00 |
| Medical-dental expenses | 150.00 |
| Diapers, clothing | 90.00 |
| TOTAL | $3,466.13 |

The difference between the couple's monthly income of $4,179.00 and monthly expenses of $3,466.13 is $712.87. This is well in excess of the minimum of $500.00 per month the Defendant was ordered to pay to the Plaintiff pursuant to the Chancellor's order dated February 11, 1998. In addition, the Defendant indicated that his income will improve once he completes his training to become an engineer. The Court concludes that the award is not unreasonable. Because the award is in the nature of spousal support and is not unreasonable, it is not dischargeable. The Court therefore will not consider the Plaintiff's alternative theory that the award is not dischargeable pursuant to section 523(a)(15).

### VI.

In her complaint, the Plaintiff asked that the Court award her attorney fees and costs. The complaint asserts that she has incurred $350.00 in attorney's fees in the divorce proceedings in an effort to enforce the judgment. The Plaintiff presented no proof concerning attorney fees or costs at trial. The Bankruptcy Code provides no independent basis for the award of attorneys fees or costs in connection with a determination of the dischargeability of a spousal support award. Therefore, the Plaintiff's request for award of attorney fees and costs is denied.

3. Mrs. Hayes testified that Mr. Hayes spends $8–$10 per day, five days per week, for his lunches. The Court has multiplied $50 per

The Court will enter a separate judgment consistent with this memorandum.

week by 4.3 weeks per month to derive $215 per month as the cost of Mr. Hayes' lunches.