In re Myron W. SISKIN, Debtor.

Myron W. Siskin and Miriam Siskin, Plaintiffs,

v.

Complete Aircraft Services, Inc., Harry K. Kutner, Jr., Esq., Sylvia Ross and Marvin A. Bass, Esq., Defendants.

Bankruptcy No. 898–82271–478.
Adversary No. 898–8393–478.

United States Bankruptcy Court,
E.D. New York.

Feb. 13, 2001.

555

Tracy L. Klestadt & Associates, by Tracy L. Klestadt, Wayne D. Holly, New York City, for the debtor-plaintiff.

Certilman, Balin, Adler & Hyman, Complete Aircraft Services, Inc. and Harry Kutner, Jr., by Michael D. Brofman, East Meadow, NY, for the defendants.

MEMORANDUM DECISION ON MOTION BY PLAINTIFFS TO RECONSIDER DECISION DISMISSING COMPLAINT AS TO COMPLETE AIRCRAFT SERVICE, INC. AND HARRY H. KUTNER, JR., ESQ.

DOROTHY EISENBERG, Bankruptcy Judge.

Myron Siskin (the "Debtor") and his wife, Miriam Siskin ("Miriam"), com-

menced an adversary proceeding against Sylvia Ross ("Ross"), her counsel, Marvin Bass, Esq. ("Bass") (Ross and Bass, collectively, the "Bass Defendants"), and Complete Aircraft Services, Inc. ("CASI") and its counsel, Harry Kutner, Jr., Esq. (CASI and Kutner, collectively, the "Kutner Defendants"), seeking damages pursuant to 11 U.S.C. § 362(h) for willful violation of the automatic stay. At a trial held before the Honorable Francis G. Conrad, U.S.B.J., it was found that the Bass Defendants and the Kutner Defendants willfully violated the automatic stay, and a trial on the issue of damages was scheduled for a later date. Judge Conrad also dismissed the portion of the action pursuant to which Miriam sought recovery of certain funds paid to CASI post-petition, as she was a non-debtor and had no standing to seek relief pursuant to 11 U.S.C. § 362(h).

Prior to the hearing on the issue of damages, which was reassigned to this Court, the Kutner Defendants filed a motion to dismiss the adversary proceeding as against them based on their argument that this Court lacks subject matter jurisdiction to hear the complaint because a State Court previously adjudicated the issues decided by Judge Conrad and rejected the Debtor's argument. By Memorandum Decision and Order dated February 23, 2000 (the "February 23 Decision and Order"), this Court granted the Kutner Defendants' motion to dismiss, finding that, if the Court upheld Judge Conrad's decision that the Kutner Defendants willfully violated the automatic stay, then the prior State Court decision would be nulli-fied, a result which is strictly prohibited by the *Rooker–Feldman* doctrine.

Now before the Court is the motion by the Plaintiffs for Reconsideration, Reargument and/or Relief from the February 23 Decision and Order (the "Motion for Reconsideration"), urging this Court to adopt the holding in the Ninth Circuit's *en banc* decision in *In re Gruntz*, 202 F.3d 1074 (9th Cir.2000), that (i) "by virtue of the power vested in them by Congress, the federal courts have the final authority to determine the scope and applicability of the automatic stay"; (ii) "the States cannot, in the exercise and control over local laws and practice, vest State courts with power to violate the supreme law of the land"; (iii) "the *Rooker–Feldman* doctrine is not implicated by collateral challenges to the automatic stay in bankruptcy"; and (iv) "[a] bankruptcy court simply does not conduct an improper appellate review of a state court when it enforces an automatic stay that issues from its own federal statutory authority." *Id.*, at 1082, as applicable, to this case. Since the applicability of the *Rooker–Feldman* doctrine in the context of automatic stay litigation is a matter of first impression in the Eastern District of New York and in the Second Circuit,[1] the Court agreed to entertain the Motion for Reconsideration. The matter for reconsideration is solely an issue of law.

After consideration of all the papers, memoranda of law and proceedings had herein, and after undertaking an exhaustive review of the jurisdictional underpinnings of bankruptcy courts and the case law analyzing the applicability of the *Rook-*

1. A District Court in the Southern District of New York affirmed a Bankruptcy Court decision holding that a New York Bankruptcy Court is bound by the determination of a New Jersey State Court that the automatic stay did not apply to a capias writ and was barred from relitigating that claim in federal court because the New Jersey court had concurrent jurisdiction with the Bankruptcy Court to determine the applicability of the automatic stay. *See In re Bona*, 124 B.R. 11 (S.D.N.Y. 1991) (Stanton, D.J.). The *Bona* Court did not base its decision on *Rooker–Feldman*, but, rather, on principles of *res judicata* and collateral estoppel, citing as authority *Teachers Ins. and Annuity Ass'n v. Butler*, 803 F.2d 61 (2d Cir.1986) (a bankruptcy court is precluded from relitigating judgments rendered by courts of competent jurisdiction absent a showing that the judgment was procured by fraud or collusion) and *Kelleran v. Andrijevic*, 825 F.2d 692 (2d Cir.1987), *cert. denied*, 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988). The *Bona* decision was never appealed to the Court of Appeals for the Second Circuit.

er–Feldman doctrine to automatic stay litigation in bankruptcy cases, the Court declines to follow the Ninth Circuit's en banc decision in Gruntz, which is not binding authority in this Circuit. Instead, the Court holds that the Rooker–Feldman doctrine precludes this Court from upsetting a New York Supreme Court judgment which determined that the automatic stay did not apply to the contempt proceeding before it, absent the enactment by Congress of a statute specifically depriving State Courts of jurisdiction to determine in the first instance whether the automatic stay applies to it. This decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, as made applicable herein by Fed.R.Bankr.P. 7052.

### FACTS

The facts of this case are undisputed. On March 3, 1998 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. Prepetition, in a State Court civil action entitled Sylvia Ross v. Myron Siskin, Ross obtained a judgment against the Debtor in the approximate amount of $15,000 on February 4, 1997. After numerous attempts by the judgment creditor to obtain documents and other information and after several judgment enforcement proceedings, the Honorable Edward Hart, Jr., J.S.C., issued a warrant of arrest dated December 2, 1997 (the "Warrant of Arrest"), of the Debtor due to the Debtor's failure to comply with certain court orders made in connection with. Ross' judgment enforcement proceedings. The Warrant of Arrest, which adjudicated the Debtor guilty of civil contempt for failure to comply with the proceedings commenced by Bass, counsel to Ross, to enforce Ross' civil judgment against the Debtor, remained outstanding as of the Petition Date.

Also outstanding against the Debtor as of the Petition Date was an order of commitment (the "Order of Commitment") which had been entered prepetition on or about February 28, 1998 by the Honorable John DiNoto, J.S.C., in a separate State Court civil action entitled Complete Aircraft Services, Inc. v. Hook Creek Industrial Park, Inc. v. Myron Siskin. The Debtor was the business attorney for CASI in the 1970's. In 1980, the Debtor borrowed $10,000 from CASI, which funds were never repaid. In September 1982, CASI obtained a money judgment against the Debtor in the sum of $14,418 (the "CASI Judgment"). In the meantime, the Debtor was disbarred from the practice of law in 1983.

Soon after entry of the CASI Judgment, counsel to CASI sought to examine the Debtor in order to collect on the CASI Judgment, but the Debtor defied the Court process and he was found in contempt of court. Kutner took over representing CASI on this matter in 1985, and, in 1986, the Debtor was held in contempt of court two times for failing to produce certain documents to assist CASI in collecting on its judgment.

Eventually, an Order of Commitment for the Debtor's arrest and confinement was issued on November 30, 1990. For the next seven years, the Debtor evaded the Sheriff. On February 27, 1998, a new Order of Commitment was issued containing another contempt finding. The Order of Commitment was issued upon the motion by CASI and supported by an affidavit submitted by Kutner, its counsel, and (a) adjudicated the Debtor guilty of civil contempt for failure to produce records in connection with CASI's civil judgment enforcement proceedings against the Debtor, (b) ordered the Debtor to make periodic payments of $5,000 per month until the CASI Judgment was satisfied, and (c) directed the Sheriff of Nassau County to locate, arrest, and detain the Debtor in the Nassau County Jail until (i) the Debtor satisfied the terms of the contempt order, (ii) satisfied the CASI Judgment, or (iii) for a period of sixty days, at which time a further determination of custody would be made. The Order of Commitment was

stamped "Received" by the Nassau County Sheriff's Department on March 10, 1998, seven days after the Petition Date.

On March 16, 1998, the Debtor was arrested by the Nassau County Sheriff pursuant to the Order of Commitment entered on behalf of the Kutner Defendants. The Debtor was detained in the Nassau County Jail for seventeen (17) days until his release on April 2, 1998. Both the Kutner Defendants and the Bass Defendants were found to have had notice of the Debtor's bankruptcy and the pendency of the automatic stay at least as of March 17, 1998.

On the morning following the Debtor's arrest, March 17, 1998, counsel to the Debtor telephoned Judge Eisenberg's chambers to inquire whether the Court would entertain an emergency *ex parte* order directing the release of the Debtor, who had been incarcerated pursuant to a State Court order, and scheduling a hearing and oral argument on the Debtor's request for sanctions against the Kutner Defendants and the Bass Defendants for violating the stay. Judge Eisenberg's chambers advised that, without any knowledge of the State Court proceeding, a hearing would have to be scheduled in the Bankruptcy Court on written application and notice to opposing parties. Since the Debtor had already been jailed, the Debtor elected to appear in State Court through counsel on an emergency basis to argue for the Debtor's immediate release pursuant to Section 362 of the Bankruptcy Code. On March 18, 1998, without advance notice to the Kutner Defendants, the Debtor's attorneys appeared before the Honorable John DiNoto, J.S.C., to make an oral application on the record for the Debtor's release, claiming that the Debtor should be released pursuant to Sections 362(a)(1), (2) and (6) of the Bankruptcy Code. Justice DiNoto requested Kutner to appear immediately to be heard on the application. Upon his appearance, argument on the record proceeded. Debtor's counsel did not file pleadings and elected to be heard based on oral argument seeking a release of the Debtor from incarceration. Kutner did not affirmatively seek or consent to the release of the Debtor from prison, nor did the Bass Defendants affirmatively seek or consent to withdraw or stay the Warrant of Arrest. The relief requested was denied by Justice DiNoto on March 18, 1998, although Debtor's counsel clearly told the Judge of the Debtor's filing of the Chapter 7 petition prior to Debtor's incarceration. No appeal of Justice DiNoto's decision was ever filed with the State Court. Further, no action was brought in this Court to obtain the release of the Debtor from prison.

On March 20, 1998, the Debtor filed a writ of habeas corpus with the United States District Court for the Eastern District of New York, which was dismissed following the Debtor's release from custody on April 2, 1998. The release occurred as a result of Miriam's (the Debtor's wife) payment of the CASI Judgment, one of several conditions in Justice DiNoto's Order of Commitment.

On June 30, 1998, the Debtor and his spouse (the "Plaintiffs") commenced this adversary proceeding against the Kutner Defendants and the Bass Defendants pursuant to Section 362(h) of the Bankruptcy Code, alleging that the Kutner Defendants and the Bass Defendants willfully violated the automatic stay. Specifically with respect to the Kutner Defendants, the complaint asserted at lease two theories of liability. First, the Debtor alleged that the Kutner Defendants violated the automatic stay by failing to take any action to stay, modify or quash the Order of Commitment post-petition or take any affirmative action to undo or mitigate their continuing violation of the stay through their inaction. Second, the Debtor alleged that the Kutner Defendants violated the automatic stay by actively opposing the Debtor's attempts to obtain his release from incarceration.

As to the Bass Defendants, the Debtor alleged that they violated the automatic stay by failing to take any action to stay,

modify or quash the Warrant of Arrest post-petition, or take any affirmative action to undo or mitigate their violation of the stay through their inaction. Second, the Debtor alleged that the Bass Defendants violated the automatic stay by opposing the Debtor's attempts to obtain his own release from incarceration.

Miriam, the non-debtor Plaintiff, sought return of the $42,189.80 paid by her to the Kutner Defendants allegedly in violation of the automatic stay. The adversary proceeding was heard before Judge Conrad, and after the Plaintiffs filed a motion for summary judgment and the Defendants cross-moved for summary judgment, Judge Conrad made the following findings, in a written decision dated February 26, 1999:

1. The Order of Commitment was a "private collection device ... within the ambit of the automatic stay." As a device for enforcement of the CASI Judgment, the Order of Commitment was governed by the "unambiguous language" of section 362(a)(2) of the Bankruptcy Code. "Once the Debtor filed his petition all actions to collect should have ceased."

2. The Defendants had an "affirmative obligation to stop the collection proceedings they had initiated, and once it became clear that Debtor would be unable to secure his own release, a further obligation of taking affirmative action to withdraw the Order of Commitment attached." Kutner's "active opposition to have the Debtor's attempt to have the Order of Commitment stayed, violated the automatic stay in a willful and deliberate manner.... Debtor suffered damages as a result of these violations by having to remain incarcerated."

3. Kutner's "active opposition to the Debtor's attempts to have the Order of Commitment stayed violated the automatic stay."

4. With respect to the Bass Defendants, Judge Conrad found that they had an affirmative obligation to withdraw the Warrant of Arrest, and violated the stay by failing to take steps to do so. The Bass Defendants' active opposition to the Debtor's attempts to secure his release violated the stay and the violations were willful.

5. Miriam, the non-debtor Plaintiff, had no standing to assert a claim under Section 362(h) of the Bankruptcy Code, and her claims against the Kutner Defendants were dismissed.

6. Judge Conrad scheduled a subsequent hearing to determine the amount of damages to be awarded to Debtor against the Bass Defendants and the Kutner Defendants.

Thereafter, the adversary proceeding was reassigned to Judge Eisenberg to hear the issue of damages. In the interim, briefs were filed on the issue of damages, and the Kutner Defendants also filed a motion to dismiss the adversary proceeding as to their conduct due to lack of subject matter jurisdiction. According to the Kutner Defendants, Justice DiNoto's oral decision denying the Debtor's request to be released from prison rendered the Bankruptcy Court without subject matter jurisdiction to hear the case pursuant to the *Rooker–Feldman* doctrine. This Court found that it could not make rulings on the applicability of the *Rooker–Feldman* doctrine absent amplification of the State Court's oral denial of the Debtor's application to be released from custody. On November 19, 1999, Justice DiNoto rendered a written decision and order (the "DiNoto Order") finding that "the continued commitment of the defendant for contempt of court, pursuant to this Court's prior order of February 27, 1998, does not violate the automatic stay provisions (specifically Section 362(a)(1), (a)(2) and (a)(6)) of the Bankruptcy Code." Based on the DiNoto Order, this Court issued its February 23, 2000 Decision and Order dismissing the adversary proceeding as to the Kutner Defendants, finding that (i) the State Court proceeding concerned the Debtor's efforts to be released from prison postpetition based on the Debtor's having filed

a bankruptcy petition and his right to an automatic stay of acts to collect a debt; (ii) the adversary proceeding before Judge Conrad dealt with whether the Kutner Defendants' post-petition conduct violated the automatic stay; (iii) the Debtor, through counsel, had a full and fair opportunity to litigate the issue of whether the automatic stay applied to the proceeding before the State Court; (iv) Justice DiNoto actually and necessarily decided the issue of whether the automatic stay applied (he found it did not) when he found that the Debtor was guilty of contempt of his court and therefore continued incarceration pursuant to the Order of Commitment; (v) consequently, the claims before the State Court and Judge Conrad were "inextricably intertwined"; (vi) Judge Conrad's decision that the actions taken by the Kutner Defendants post-petition to enforce the Order of Commitment and keep the Debtor incarcerated were violative of Section 362(a)(2) of the Bankruptcy Code was tantamount to reversal of Judge DiNoto's prior decision; and (vii) the *Rooker–Feldman* doctrine applies to the subsequent decision by Judge Conrad and no exceptions to the *Rooker–Feldman* doctrine apply. Thus, the adversary proceeding as to the Kutner Defendants was dismissed.

Shortly after the entry of the February 23 Decision and Order, the Plaintiffs filed the Motion for Reconsideration based on a reissued decision on February 3, 2000 by the Ninth Circuit in *In re Gruntz,* 166 F.3d 1020 (9th Cir.1999), *opinion amended and superseded by* 177 F.3d 728 (9th Cir. 1999), *reh'g en banc granted, opinion withdrawn by* 177 F.3d 729 (9th Cir.1999), *opinion after reh'g* 202 F.3d 1074 (9th Cir.2000).

### DISCUSSION

1. *The Gruntz Decision and Concurrent Jurisdiction in regard to the Applicability of the Automatic Stay.*

A careful review of the *Gruntz* decision is necessary in order to determine whether this Court will follow its holding. In the *Gruntz* case, Robert Gruntz was obligated prepetition to make certain monthly child support payments. Gruntz failed to do so and filed a Chapter 13 petition in bankruptcy. Under his Chapter 13 plan, Gruntz agreed to make the continuing monthly child support payments and to pay out an additional $291 per month towards the discharge of an accrued $5, 100 in past due child support. Thereafter, the case was converted to a case under Chapter 11, and the Chapter 13 trustee did not disburse the child support payments to Gruntz's ex-spouse. As a result, the debtor's ex-spouse complained to the local district attorney's office, and the Los Angeles District Attorney filed a criminal complaint charging Gruntz with violation of a certain California Penal Code.

After the debtor was convicted, he filed an adversary complaint against the County of Los Angeles (the "County") and sought a temporary restraining order to prevent the state court from proceeding with sentencing. The Bankruptcy Court declined to restrain the proceedings, and Gruntz received a jail sentence. His conviction was affirmed on appeal and while the appeal was pending, Gruntz was convicted a second time under the same California Penal Code provision, as well as a California Penal Code provision regarding failure to obey a state court order.

Thereafter, Gruntz filed an adversary complaint against the County in the Bankruptcy Court, seeking a determination that the state criminal proceedings were void as violative of the automatic stay. The Bankruptcy Court dismissed the complaint under the theory of collateral estoppel, and on appeal, the District Court affirmed on the basis of the *Rooker–Feldman* doctrine. Ultimately, the Court of Appeals for the Ninth Circuit issued an *en banc* decision holding that state courts do not possess subject matter jurisdiction to determine the scope of the automatic stay, but the Court further held that criminal convictions were excepted from the automatic

stay pursuant to Section 362(b)(1) of the Bankruptcy Code.

■ The Ninth Circuit recognized the *Rooker–Feldman* doctrine as the embodiment of the "unremarkable proposition" that federal district courts have original and not appellate jurisdiction, and that therefore federal courts cannot conduct a direct review of state court decisions. That is left solely to the United States Supreme Court. *In re Gruntz*, 202 F.3d at 1078. The Ninth Circuit correctly stated that the *Rooker–Feldman* doctrine does not affect the writ of habeas corpus, which expressly permits federal review of final state court judgments, and requires exhaustion of state court remedies as a precondition for federal relief. See 28 U.S.C. §§ 2254, 2254(b)(1)(A). This Court agrees with these propositions. However, this Court disagrees with the Ninth Circuit's view that State Courts do not possess subject matter jurisdiction to determine the scope of the automatic stay as it affects its own orders.

■ Section 1334(a) of the Judiciary Code provides, "[e]xcept as provided in subsection (b) of this section, the district courts shall have *original and exclusive jurisdiction of all cases under title 11.*" 28 U.S.C. § 1334(a) (emphasis supplied). Certainly, this section is properly read as a grant of "comprehensive jurisdiction to the bankruptcy courts," and the Court agrees with the Ninth Circuit's reading of this provision. This Court also finds no reason to disagree with the Ninth Circuit's discussion of 28 U.S.C. § 1334(b) up to a point. Section 1334(b) of the Judiciary Code provides as follows:

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b). Accordingly, civil proceedings "arising under" the Bankruptcy Code or "arising in or related to" bankruptcy cases are within the jurisdiction of not only the district courts, but other tribunals as well.

■ Matters which "arise in or are related to bankruptcy cases" are either "core" or "non-core" in nature. The Ninth Circuit's interpretation of "core" and "non-core" matters and its reading of Section 1334(b) of the Judiciary Code in connection with the automatic stay is at odds with the understanding of this Court and of the Sixth Circuit. Certainly this Court agrees with the following general propositions enunciated in the *Gruntz* decision:

> In general, a 'core proceeding' in bankruptcy is one that 'invokes a substantive right provided by title 11 or … a proceeding that, by its nature, could arise only in the context of a bankruptcy case.' *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987). 'Non-core proceedings' are those not integral to the restructuring of the debtor-creditor relations and not involving a cause of action arising under title 11. See *Windsor Communications Group, Inc. v. Grant (In re Windsor Communications Group)*, 75 B.R. 713, 721 (E.D.Pa. 1985). Under the 1984 Act, bankruptcy judges may only propose findings of fact and conclusions of law to federal district courts as to non-core proceedings related to a case under title 11. See 28 U.S.C. § 157(b)(1). However, bankruptcy judges may only propose findings of fact and conclusions of law to federal district courts as to non-core proceedings related to a case under title 11. See 28 U.S.C. § 157(c)(1). Thus, the separation of 'core' and 'non-core' proceedings in the 1984 Act creates a distinction between those judicial acts deriving from the plenary Article I bankruptcy power and those subject to general Article III federal court jurisdiction. Central to the bankruptcy 'case' as to which exclusive Article I

federal jurisdiction lies is the automatic stay imposed by 11 U.S.C. § 362(a). Congress has declared that actions to 'terminate, annul, or modify' the automatic stay are core bankruptcy proceedings. 28 U.S.C. § 157(b)(2)(G)....

*Gruntz*, 202 F.3d at 1081–82. Consequently, it is undisputed that only a bankruptcy court has jurisdiction to *'terminate, annul or modify'* the automatic stay. *See also Farley v. Henson*, 2 F.3d 273 (8th Cir. 1993); *Continental Casualty Co. v. Gullett*, 253 B.R. 796 (S.D.Tex.1999).

■ The Ninth Circuit concludes from this subsection of Section 157 of the Judiciary Code that determination of the *applicability* of the automatic stay to actions pending before state and federal courts as of the commencement of the bankruptcy case is a 'core' matter reserved to the Bankruptcy Courts. As the Kutner Defendants point out, the "melding of these two concepts (i.e., applicability of the automatic stay as compared to granting relief from the automatic stay) by the Ninth Circuit in *Gruntz*, ... has serious implications on the issue of sovereignty of a state judiciary to determine its own subject matter jurisdiction." (Kutner Defts.' Memo of Law, p. 7). Moreover, there is no language in Section 1334 of the Judiciary Code or in Section 362 of the Bankruptcy Code which *deprives* a state court of jurisdiction to determine whether the automatic stay applies to an action before it. In fact, the Second Circuit has held that a federal district court in which a prepetition action is pending has concurrent jurisdiction with the Bankruptcy Court to determine the applicability of the automatic stay. *Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin–United Corp.)*, 765 F.2d 343 (2d Cir.1985). Additionally, lower courts in the Second Circuit have extended the holding in *Baldwin–United* to hold that state courts can decide whether the automatic stay applies to proceedings before them. *In re Bona*, 124 B.R. 11 (S.D.N.Y.1991); *In re Neuman*, 71 B.R. 567, 573–74 (S.D.N.Y.1987) (state court

could have decided whether automatic stay applied to proceedings before it, but the Bankruptcy Court properly stayed state court proceedings).

That rule is also accepted in the majority of other jurisdictions. *See, e.g., In re Singleton*, 230 B.R. 533, 538 (6th Cir. BAP 1999) (the debtor confuses jurisdiction to grant relief from the stay under 11 U.S.C. § 362(d) with jurisdiction to determine whether the stay applies in the first instance); *In re Glass*, 240 B.R. 782 (Bankr. M.D.Fla.1999) (the court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but whether the proceeding pending before it is subject to the automatic stay); *Matter of Pope*, 209 B.R. 1015, 1020 (Bankr.N.D.Ga.1997) (the applicability of the automatic stay falls concurrently within the purview of the Bankruptcy Court and that of the state court); *In re Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 215 (Bankr.D.Del.1995) (a motion to modify or lift the automatic stay with respect to a particular action must be made to the Bankruptcy Court; in contrast, the issue of the applicability of the automatic stay to the litigation in question is within the competence of both courts— the court in which the litigation is pending and the Bankruptcy Court supervising the reorganization); *In re Mann*, 88 B.R. 427, 430 (Bankr.S.D.Fla.1988) (state court has concurrent jurisdiction over applicability of stay to contempt proceedings arising out of alimony and child support award). *But see In re Gruntz*, 166 F.3d 1020 (9th Cir. 1999), *opinion amended and superseded by* 177 F.3d 728 (9th Cir.1999), *reh'g en banc granted, opinion withdrawn by* 177 F.3d 729 (9th Cir.1999), *opinion after reh'g* 202 F.3d 1074 (9th Cir.2000) (state court lacked subject matter jurisdiction to determine that automatic stay did not preclude criminal prosecution of debtor; therefore, *Rooker–Feldman* did not preclude Bankruptcy Court from redetermining whether prosecution violated stay); *In re Rainwater*, 233 B.R. 126, 161 (Bankr.N.D.Ala.

1999), *vacated on other grounds,* 254 B.R. 273 (N.D.Ala.2000) (the determination of the applicability of the automatic stay is squarely and exclusively within the purview of the federal courts).

█ In *Gruntz,* the Ninth Circuit also opined that the purpose of Section 1334(b) of the Judiciary Code is not to create jurisdiction in non-bankruptcy courts, but to allow district courts in which the bankruptcy case is filed to adjudicate bankruptcy-related actions in which jurisdiction has been vested in other courts. *Gruntz,* 202 F.3d at 1083. That view is diametrically opposed to the traditional view, which is that the only aspect of a bankruptcy proceeding over which district courts and their bankruptcy units have exclusive jurisdiction is the bankruptcy petition itself; in other matters arising in or relating to bankruptcy cases, unless the Bankruptcy Code provides otherwise, state courts have concurrent jurisdiction, and Bankruptcy Courts are prohibited from relitigating these matters if state courts have already resolved them. *Sanders v. City of Brady (Matter of Brady, Texas Municipal Gas Corp.),* 936 F.2d 212, 218 (5th Cir.1991) (internal citations omitted), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 748 (1991). *See also In re Weinberg,* 153 B.R. 286 (Bankr.D.S.D.1993) (under statute granting federal district courts original but not exclusive jurisdiction over all civil proceedings arising under Title 11, or arising in or related to cases under Title 11, "non-exclusive jurisdiction" means other federal and state courts are not deprived of jurisdiction over civil proceedings).

The Debtor argues that the question posed by the facts in *Baldwin–United* was whether a federal court, not a state court, had jurisdiction to decide the automatic stay question and, therefore, any decision purporting to address a state court's jurisdiction in that regard was pure *dicta,* which, as a matter of law, this Court is not bound to follow (Debtor's Reply, pp. 4–5). While that statement is true as far as it

goes, one commentator has taken the argument further, and states:

> There is no principled reason for drawing a distinction between state and federal courts in this respect. If a statute vests exclusive jurisdiction in bankruptcy courts, then it ousts the jurisdiction of all other courts, both state and federal. No statute vests exclusive jurisdiction in bankruptcy courts to determine the applicability of the automatic stay, and certainly no statute gives such jurisdiction to federal courts, bankruptcy and nonbankruptcy alike, to the exclusion of state courts.

David B. Young, *Automatic Stay Issues: Select Recent Developments,* 804 PLI/Comm 899, 912 (April 2000).

A further problem created by following *Gruntz* is the confusion it will create in the minds of parties appearing in state court who obtain a ruling or judgment from such court. Parties such as the Kutners would be charged with the obligation of ignoring a state court's decision or else risk running afoul of a subsequent Bankruptcy Court decision overruling the state court decision. No finality is obtained, and the appeals process would further complicate matters because the parties would not be sure which appellate decision to follow.

█ In view of the foregoing, this Court believes that the majority view is correct and holds that a proceeding to determine whether the automatic stay applies to a prepetition state court action is a proceeding that arises in or is related to a bankruptcy case and, in the absence of a provision in Section 362 of the Bankruptcy Code or Section 157 of the Judiciary Code depriving state courts of jurisdiction, the state courts have concurrent jurisdiction to decide the issue. Hence, in the case at bar, Justice DiNoto had subject matter jurisdiction to determine the applicability of the automatic stay and, indeed, found that it did not apply to his prior Order of Commitment.

### 1. Applicability of the Rooker–Feldman Doctrine.

 The *Rooker–Feldman* doctrine is a limitation on subject matter jurisdiction in federal courts, and the doctrine "expresses the principle that 'federal trial courts have only original subject matter, and not appellate, jurisdiction [and] ... may not entertain appellate review of [or collateral attack on] a state court judgment.'" *In re Singleton*, 230 B.R. 533, 536 (6th Cir. BAP 1999) (citing *In re Johnson*, 210 B.R. 1004, 1006 (Bankr.W.D.Tenn. 1997)). Thus, it follows that federal district courts have "no authority to review the final determinations of a state court in judicial proceedings." *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir.1986). Direct federal appellate review of state court decisions must occur, if at all, in the United States Supreme Court. *See* 28 U.S.C. § 1257.[2]

 The *Rooker–Feldman* doctrine deprives a federal court of jurisdiction to adjudicate claims when "the precise claims raised in a state court proceeding are raised in the subsequent federal proceeding," or to the extent that the "claims raised in a federal proceeding were 'inextricably intertwined' with the state court's determinations." *Moccio v. New York State Office of Court Administration*, 95 F.3d 195, 198 (2d Cir.1996). The Second Circuit held that, to determine whether the claims raised in the federal proceeding were "inextricably intertwined" with the state court's judgment, it is useful to apply the analysis used to determine issue preclusion, which under New York law involves determining whether (1) the issue

was actually and necessarily decided by the state court, and (2) the litigant against whom issue preclusion was invoked had a full and fair opportunity to litigate the issue. *Id.* at 200; see also *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir.1995). The underlying basis for applying such an analysis is to ensure that a claim presented to the federal court will not require an indirect review of the validity of the state court decision. *Corsini v. Ross*, 152 F.3d 917, 1998 WL 321542, *2 (2d Cir.1998) (unpublished decision). Stated another way, in order to determine whether a claim is "inextricably intertwined" with a state court judgment, the "federal court must analyze whether the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Hatcher v. United States Trustee (In re Hatcher)*, 218 B.R. 441, 447 (8th Cir. BAP 1998), *aff'd*, 175 F.3d 1024 (8th Cir. 1999). Succinctly, a federal claim is "inextricably intertwined" with a state court judgment if "[t]he federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Keene Corp. v. Cass*, 908 F.2d 293, 296–97 (8th Cir.1990) (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 1530, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring)). On the other hand, where the claims were never presented in the state court proceedings and the plaintiff did not have the opportunity to present the claims in those proceedings, the claims are not "inextricably intertwined" and therefore are not barred under the *Rooker–Feldman* doctrine. *Moccio*, 95 F.3d at 199. Finally, the *Rooker–Feldman* doctrine applies to state court decisions even

---

2. Section 1257 of the Judiciary Code provides:

§ 1257. State courts; certiorari.

(a) Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its

being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

(b) For the purposes of this section, the term "highest court of a State" includes the District of Columbia Court of Appeals.

28 U.S.C. § 1257.

if they are wrongly decided. *Audre, Inc. v. Casey (In re Audre, Inc.),* 216 B.R. 19 (9th Cir. BAP 1997). In this case, the State Court was fully apprised that the Debtor had filed a petition in Bankruptcy after the warrant was issued, but before the Bankruptcy filing, and that execution took place post-petition. The State Court recognized the argument and refused to release the Debtor from incarceration based on that Court's determination that the Debtor was in contempt of its Court. This Court is precluded from acting as an Appellate Court to determine if the State Court decision was appropriate.

As an aside, this Court cannot determine whether the creditor's affirmative actions acquiescing to the Plaintiff's oral request to release the Defendant from prison made before Justice DiNoto would have had any effect upon Justice DiNoto's decision in regard to the Debtor's contempt of court before him.

The Debtor has not convinced this Court that the February 23, 2000 Decision and Order should be withdrawn or modified. Simply put, *Rooker–Feldman* divests this Court of jurisdiction to review the DiNoto Order, regardless of whether this Court believes the DiNoto Order to be correct or incorrect. Numerous cases support this decision. As the Sixth Circuit Bankruptcy Appellate Panel stated in *Singleton:*

> *Rooker–Feldman* has often been applied to preclude bankruptcy court review of state court decisions. See *Reitnauer v. Texas Exotic Feline Found., Inc. (In re Reitnauer),* 152 F.3d 341 (5th

3. "Both *Singleton* and *Glass* [had] thorough discussions of the exceptions to ... *Rooker–Feldman* ... and properly concluded that none of these exceptions applied. First, *Rooker–Feldman* does not apply when a statute vests exclusive jurisdiction in federal courts or a particular class of federal courts and when a state court has simply ignored or defied the statute. For example, a state court judgment purporting to lift, modify or annul the stay would be void and could be reviewed and vacated by a federal court.... A state court judgment that encroached on these areas would be a nullity and would not be

Cir.1998); *Baldino v. Wilson (In re Wilson),* 116 F.3d 87 (3d Cir.1997); *Goetzman,* 91 F.3d at 1177; *Besing v. Hawthorne (In re Besing),* 981 F.2d 1488, 1496 (5th Cir.) ("The Bankruptcy Code was not intended to give litigants a second chance to challenge a state court judgment nor did it intend for the Bankruptcy Court to serve as an appellate court.') (quoting *G & R Mfg.Co. v. Gunia (In re G & R Mfg. Co.),* 91 B.R. 991, 994 (Bankr.M.D.Fla.1988) *cert. denied,* 510 U.S. 821, 114 S.Ct. 79, 126 L.Ed.2d 47 (1993); *Ferren v. Searcy Winnelson Co. (In re Ferren),* 227 B.R. 279 (8th Cir. BAP 1998); *Hatcher,* 218 B.R. at 446–47; *Johnson,* 210 B.R. at 1006; *Beardslee v. Beardslee (In re Beardslee),* 209 B.R. 1004 (Bankr.D.Kan. 1997)).

*Singleton,* 230 B.R. at 537–38. *Accord Ferren v. Searcy Winnelson Co. (In re Ferren),* 203 F.3d 559 (8th Cir.2000) (affirming lower court and agreeing with the reasoning of the Bankruptcy Appellate Panel of the Sixth Circuit in *Singleton* that state court determination that bankruptcy order staying sale of the debtor's personal property did not apply to other property of the debtor is not subject to collateral attack by a federal court because no exception to *Rooker–Feldman* applies).[3]

This Court subscribes to the viability of *Rooker–Feldman* in this situation especially, where a State Court has issued a contempt order. As Judge Krechevsky stated in *In re Ormond Beach Associates L.P.,* 212 B.R. 31 (Bankr.D.Conn.1997):

shielded by *Rooker–Feldman* .... Second, the *Rooker–Feldman* doctrine does not apply if a federal statute specifically grants lower federal courts the right to review state court judgments. For example, 28 U.S.C. § 2241 authorizes federal district courts to review state court decisions in habeas corpus proceedings. Thus, *Rooker–Feldman* would be irrelevant in such an instance. There is no comparable bankruptcy statute." David B. Young, *Automatic Stay Issues: Selected Recent Developments,* 804 PLI/Comm 899, 914 (April 2000) (internal citations omitted).

[C]ontempt-of-court proceedings originating prepetition in a nonbankruptcy court, whether such proceedings involve upholding the dignity of the nonbankruptcy court or effectuation of a creditor's remedies, should be heard before such nonbankruptcy court in which the contemptuous actions occurred. Common sense indicates that a bankruptcy court should not, and probably cannot require the nonbankruptcy court to appear to liquidate the nonbankruptcy court's finding of contempt-of-court.

*Id.* at 33. Judge Krechevsky's remarks concerned a contempt order issued by a United States District Court, but they are even more compelling when the nonbankruptcy court in question is a State Court. *See Juidice v. Vail,* 430 U.S. 327, 335–36, 97 S.Ct. 1211, 1217, 51 L.Ed.2d 376 (1977) ("The contempt power lies at the core of the administration of a State's judicial system ... [and] federal-court interference with the State's contempt process is an offense to the State's interest.") (internal citations omitted). Due process concerns are vindicated because, if a debtor believes that the State Court wrongly decided the issue of the applicability of the automatic stay to the contempt proceeding, then the State Court appellate process is available to that debtor and, finally, he or she may seek direct review before the United State Supreme Court. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). An attempt to collaterally attack an unfavorable State Court decision in a lower federal court, however, is an impermissible end run around direct review proscribed by Section 1257 of the Judiciary Code and does not comport with the interests of federalism and comity with State Courts.

So compelling is the precept that federal courts should not interfere with the state court contempt process and, especially under the facts and circumstances of this case (the Debtor had been found in contempt of court and evaded the Sheriff for seven years), that, even if the Debtor had refrained from arguing in the State Court and had immediately commenced an adversary proceeding pursuant to 11 U.S.C. §§ 105(a) and 362 and Fed.R.Bankr.P. 7001(7) and (9), in this Court seeking injunctive relief from the Order of Commitment and a declaratory judgment that the automatic stay prevented the continuing incarceration of the Debtor post-petition, then, although he would not have run afoul of 28 U.S.C. §§ 1257, he would still have had an uphill battle defending against a motion for abstention under 28 U.S.C. § 1334(c) in regard to a State Court's Order for Contempt of Court.

Finally, the Debtor was not without remedies if he disagreed with the DiNoto Order continuing the Debtor's incarceration. The Debtor had the right to appeal the decision in the State Court, and also had the right to seek a writ of habeas corpus in the District Court for the Eastern District of New York for his release. As discussed above, the Debtor did seek a writ of habeas corpus which was not heard only because the Debtor's wife had paid the judgment, thereby purging the Debtor of the contempt.

### CONCLUSION

1. This matter is before the Court pursuant to Fed.R.Civ.P. 59(e) and 60(b), as made applicable to adversary proceedings by Fed R.Bankr.P. 9023 and 9024, respectively.

2. A proceeding to determine whether the automatic stay applies to a prepetition state court action is a proceeding under 28 U.S.C. § 1334(b) which arises in or is related to a bankruptcy case and, absent a provision in 11 U.S.C. § 362 or 28 U.S.C. § 157 depriving state courts of jurisdiction, the state courts have concurrent jurisdiction to decide the issue of whether the State Court has subject matter jurisdiction to hear the matter. The Court declines to follow the Ninth Circuit's *en banc* decision in *In re Gruntz,* 202 F.3d 1074 (9th Cir. 2000), that a state court does not have subject matter jurisdiction to determine

the applicability of the automatic stay to a proceeding before it.

3. The *Rooker–Feldman* doctrine deprives this Court of subject matter jurisdiction to determine the Debtor's claims against the Kutner Defendants in this adversary proceeding. Consequently, on reconsideration, the Court declines to modify its prior decision dismissing the adversary proceeding as against the Kutner Defendants. Plaintiff's motion is denied.

An Order in accordance with this decision will be entered simultaneously herewith.