**In re Richard J. IVANI, Debtor.**

**No. 03–25009–ess.**

United States Bankruptcy Court,
E.D. New York.

March 3, 2004.

Jeffrey Herzberg, Zinker, Gelfand & Herzberg, LLP, Smithtown, NY, for Debtor.

Harold D. Jones, Jaspan Schlesinger Hoffman, LLP, Garden City, NY, for Trustee.

**MEMORANDUM DECISION DENYING THE DEBTOR'S MOTION TO REVERSE CONTEMPT FINDING BY STATE COURT, TO PROHIBIT INCARCERATION OF THE DEBTOR PURSUANT TO THE CONTEMPT ORDER, AND TO HOLD CATHERINE IVANI AND ROSE ANN BRANDA, ESQ. IN CONTEMPT OF COURT**

ELIZABETH S. STONG, Bankruptcy Judge.

Before the Court is a motion (the "Motion"), brought by Richard J. Ivani, the above-captioned debtor (the "Debtor"), for an order (i) to reverse the contempt finding of the Supreme Court of the State of New York, County of Richmond (the "Contempt Order"); (ii) to prohibit incarceration of the Debtor called for in the Contempt Order; and (iii) to hold Catherine Ivani and Rose Ann Branda, Esq. in contempt of this Court. The Debtor filed for relief pursuant to chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") on November 13, 2003 (the "Petition Date"). The Motion was filed with this Court on February 10, 2004. After a

hearing held on February 27, 2004 (the "Hearing"), at which the oral arguments of the Debtor, Catherine Ivani, and Rose Ann Branda, Esq. were heard, and after consideration of the relevant factors, the Motion is denied in its entirety for the reasons set forth below.

## Background

The Debtor filed for bankruptcy relief after long and protracted divorce proceedings in New York Supreme Court. The Debtor and Catherine Ivani were married in 1986. In 1997, Catherine Ivani commenced an action for divorce in the New York Supreme Court, Richmond County (the "Supreme Court"). Motion to Reverse Contempt Findings, ¶ 3. The Supreme Court awarded Catherine Ivani $473.24 per week in child support, plus private schooling costs for their two children. *Id.* The Debtor was also ordered to pay $69,106.93 for Catherine Ivani's attorneys' fees, and $30,250.00 for expert witness fees. *Id.* These awards were appealed by the Debtor and subsequently affirmed by the Appellate Division, Second Department. Motion to Reverse Contempt Findings, ¶ 5.

The Debtor states that he filed for bankruptcy relief on account of his inability to comply with the equitable distribution and various support awards made to Catherine Ivani. *Id.* Although there has been no examination of the Debtor's assets by this Court, nor an examination of his ability to pay the awards, it appears that the Debtor was not diligent in paying them. Catherine Ivani has garnished the Debtor's income in order to collect the award for child support. There is currently an income execution on the Debtor's salary in the amount of $1,393.00 per month, which represents partial payment toward the Debtor's child support obligations. Motion to Reverse Contempt Findings, ¶ 8.

Catherine Ivani, through her attorney Rose Ann C. Branda, Esq., filed a motion in the Supreme Court to hold the Debtor in contempt for his failure to pay the outstanding child support, Catherine Ivani's attorneys' fees, and Catherine Ivani's expert witness fees. Motion to Reverse Contempt Findings, ¶ 10. In connection with this motion, the Supreme Court issued an order to show cause (the "Order to Show Cause") requiring the Debtor to show why an order should not be made punishing the Debtor and holding him in contempt of court for his failure to abide by the terms of the divorce judgment. Motion to Reverse Contempt Findings, Exhibit B (Order to Show Cause). *See also* Motion to Reverse Contempt Findings, ¶ 10. The hearing on the Order to Show Cause was adjourned several times, and ultimately was held on January 16, 2004. *Id.* By an order dated January 26, 2004, the Supreme Court found the Debtor in contempt of the judgment of divorce and awarded Catherine Ivani a money judgment in the amount of $50,239.31 for arrears in child support and tuition for the Debtor's son. The Contempt Order also directed the Debtor to pay the outstanding child support, the attorneys' fees, and the outstanding award for equitable distribution within thirty days of the order, or be subject to "civil jail" until the amounts are paid. Motion to Reverse Contempt Findings, Exhibit C (Contempt Order). *See also* Motion to Reverse Contempt Findings, ¶ 11. The Supreme Court additionally awarded Catherine Ivani $3,150.00 in attorneys' fees relating to the Contempt Motion. *Id.*

In this Motion, the Debtor argues that the Supreme Court, by issuing the Contempt Order, acted in violation of the automatic stay, which is imposed by 11 U.S.C. § 362(a) immediately upon the filing of a petition for relief in bankruptcy. Motion to Reverse Contempt Findings, ¶ 12. The Debtor acknowledges that the filing of a

petition in bankruptcy does not operate as a stay against the commencement or continuation of an action or proceeding for "the collection of alimony, maintenance, or support from property that is not property of the estate," but argues that the Contempt Order nevertheless violates the automatic stay because it seeks to collect from property of the estate, inasmuch as the Debtor's postpetition assets are assertedly insufficient to pay the amounts due. Motion to Reverse Contempt Findings, ¶¶ 12–14. This violation of the stay, the Debtor argues, makes the continuation of the Order to Show Cause void, and in turn, subjects both Catherine Ivani and her attorney, Rose Ann Branda, to contempt sanctions for proceeding with the Order to Show Cause in violation of the automatic stay. Motion to Reverse Contempt Findings, ¶¶ 13–14, 19.

### Discussion

*Supreme Court Adjudication of the Applicability of the Automatic Stay*

The automatic stay is one of the fundamental protections that the bankruptcy laws give to debtors. It provides debtors with a breathing spell from creditors by halting collection efforts and foreclosure actions. The stay gives the debtor a chance to repay his or her debts, reorganize his or her assets, or somehow find another way to address the financial difficulties which drove the debtor into bankruptcy in the first place. H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6296–97, *reprinted in* Vol. C COLLIER ON BANKRUPTCY, App. Pt. 4(d)(I), 4–1281 (15th ed. rev.). At the same time, Congress has determined that in some circumstances, the payment of a type of debt is so important as a matter of public policy that the automatic stay will not apply. One such circumstance is "the collection of alimony, maintenance, or support from property that is not property of the estate." 11 U.S.C. § 362(b)(2)(B). On the face of the statute, then, it appears that Supreme Court proceedings seeking to collect maintenance or support from non-estate property may continue without regard to the bankruptcy proceeding.

■ In such circumstances, an issue may arise as to which court may adjudicate the issue of the applicability of the automatic stay. The Second Circuit has held that where a prepetition action is pending in a federal district court, that court has concurrent jurisdiction with the bankruptcy court to determine whether the automatic stay applies to the prepetition action. *Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin–United Corp.)*, 765 F.2d 343, 347 (2d Cir.1985). Lower courts within the Second Circuit have extended this holding, finding that state courts also have concurrent jurisdiction with the bankruptcy court in determining whether an action is affected by the automatic stay. *Siskin v. Complete Aircraft Services, Inc. (In re Siskin)*, 258 B.R. 554, 562 (Bankr.E.D.N.Y.2001) (Eisenberg, J.) (citing *In re Bona*, 124 B.R. 11 (S.D.N.Y.1991); *In re Neuman*, 71 B.R. 567, 573–74 (S.D.N.Y.1987)). The majority rule regarding determination of the applicability of the automatic stay is in accord with the holdings of the lower courts within the Second Circuit; that is, the majority rule finds that federal and state courts have concurrent jurisdiction over the matter. *See In re Siskin*, 258 B.R. at 562 (citing circuit and district authority following this rule). *See also*, Carlos J. Cuevas, *The Rooker–Feldman Doctrine and the Automatic Stay*, 2002 ABI JNL LEXIS 7, *1 (2002) ("The majority rule is that the state and federal courts have concurrent jurisdiction to determine the applicability of the automatic stay.").

The majority rule is based on section 1334 of the Judiciary Code, which confers jurisdiction on the bankruptcy courts. Section 1334(a) states that, "[e]xcept as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all *cases* under title 11." 28 U.S.C. § 1334 (emphasis added). Here, the exclusivity of jurisdiction provision of determination of section 1334(a) does not apply, because the determination of the applicability of the automatic stay is not a bankruptcy "case" within the meaning of the statute. *In re Glass*, 240 B.R. 782, 787 (Bankr.M.D.Fla.1999). Section 1334(b) states that, "[n]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. As Judge Eisenberg concluded, "civil proceedings 'arising under' the Bankruptcy Code or 'arising in or related to' bankruptcy cases are within the jurisdiction of not only the district courts, but other tribunals as well." *In re Siskin*, 258 B.R. at 561.

Here, the contempt proceeding was "related to" the bankruptcy case, which suffices under section 1334(b) to confer original jurisdiction in this Court. But under section 1334(a), that jurisdiction is not exclusive. As a result, the Supreme Court, which heard and adjudicated the matter of the applicability of the automatic stay, had concurrent jurisdiction to do so, and the Debtor's argument that a state court decision regarding the scope of the stay is void ab *initio* must fail. *See, e.g., In re Slette-land*, 260 B.R. 657, 668 n. 6 (Bankr. S.D.N.Y.2001) (where the state court would not vacate the judgment for lack of jurisdiction, it cannot be reconsidered by a federal court); *In re Salem*, 290 B.R. at 483 (a challenge to the state court's subject matter jurisdiction is not an exception to the *Rooker–Feldman* doctrine).

## The Rooker–Feldman Doctrine and Subject Matter Jurisdiction

■ The *Rooker–Feldman* doctrine provides that "lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Neshewat v. Salem (In re Salem)*, 290 B.R. 479, 482 (S.D.N.Y.2003) (citing *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir.1998)). The doctrine is derived from two Supreme Court cases, decided sixty years apart, which give effect to the principle that the federal courts have only original subject matter jurisdiction, and for this reason may not entertain direct or collateral attacks on a state court judgment. *Singleton v. Fifth Third Bank of Western Ohio (In re Singleton)*, 230 B.R. 533, 536 (6th Cir. BAP 1999) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)).

■ The *Rooker–Feldman* doctrine bars both direct and collateral attacks on state court final judgments, and for this reason the state and federal claims do not need to be identical in order for the doctrine to apply. Under the doctrine, a federal district court lacks jurisdiction to the extent that the federal claims are "inextricably intertwined" with the state court's determinations. *Feldman*, 460 U.S. at 482–84 n. 16, 103 S.Ct. 1303. No less an authority than a United States Supreme Court Justice has acknowledged that the boundaries of "inextricably intertwined" are not always clear. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring) (whether a federal claim is "inextrica-

bly intertwined with ... a state-court judgment may sometimes be difficult to answer."). In addressing this difficulty, the Second Circuit has held that, "at a minimum, ... where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 199–200 (2d Cir.1996) (citing *Pennzoil*, 481 U.S. at 25, 107 S.Ct. 1519). Essentially, "a federal claim is 'inextricably intertwined' with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" *Bell v. State of New York*, 2000 WL 1273637, *4, 2000 U.S. Dist. LEXIS 12854, *12 (S.D.N.Y.2000) (citing *Pennzoil*, 481 U.S. at 25, 107 S.Ct. 1519 (Marshall, J., concurring)).[1]

■ Here, the issue of the scope and applicability of the automatic stay was litigated and decided in the Supreme Court contempt proceedings. The Supreme Court found that "the amounts sought in this proceeding are not subject to the protection of the automatic stay of the Bankruptcy Court and the defendant is in contempt for not paying the amounts ordered." Motion to Reverse Contempt Findings, Exhibit C (Contempt Order). As discussed above, it is clear that the Supreme Court had authority to adjudicate the automatic stay issue. It is equally apparent that the Debtor's arguments here will succeed only to the extent that the Supreme Court wrongly decided the issue before it. That is, the Debtor's argument will succeed only if this Court finds that the Supreme Court made an incorrect determination and overrules that determination. Therefore, the claim before this Court is "inextricably intertwined" with the Supreme Court's decision, and any attempt by this Court to enforce the automatic stay with respect to the Contempt Order is barred by the *Rooker–Feldman* doctrine.[2]

In conclusion, the Court finds that the Supreme Court had concurrent jurisdiction to determine the scope and applicability of the automatic stay with regard to the Con-

1. Notably, the *Rooker–Feldman* doctrine applies even where the state court adjudication was erroneously decided. Even an erroneous judgment must continue to be given effect until it is modified in an appropriate appellate proceeding in the appropriate forum. *Bell*, 2000 WL 1273637 at *4, 2000 U.S. Dist. LEXIS 12854 at *13. That is, "[the bankruptcy] court is precluded from acting as an appellate court to determine if the state court decision was appropriate." *In re Siskin*, 258 B.R. at 565.

2. The Court recognizes the Debtor's arguments that the Court should adopt the reasoning of the Ninth Circuit in *In re Gruntz*, 202 F.3d 1074 (9th Cir.2000). There, the court held that the *Rooker–Feldman* doctrine prohibits federal district courts from conducting direct review of state court decisions, but also concluded that state courts do not have subject matter jurisdiction to determine the scope of the automatic stay in relation to state court orders. *Id.* at 1078, 1082–83. Rather, the Ninth Circuit held that "by virtue of the power vested in them by Congress, the federal courts have the final authority to determine the scope and applicability of the automatic stay ... Thus, the *Rooker–Feldman* doctrine is not implicated by collateral challenges to the automatic stay in bankruptcy." *Id.* at 1083. Under the reasoning of *Gruntz*, any decision made by a state court regarding the scope of the automatic stay would be void ab *initio*. This Court declines to adopt the reasoning of *Gruntz*, and observes that it has been rejected by other courts within this circuit. *See Siskin v. Complete Aircraft Services, Inc. (In re Siskin)*, 258 B.R. 554, 562 (Bankr.E.D.N.Y.2001) (Eisenberg, J.) (citing *In re Bona*, 124 B.R. 11 (S.D.N.Y.1991); *In re Neuman*, 71 B.R. 567, 573–74 (S.D.N.Y.1987)).

tempt Order. As a consequence, Catherine Ivani and Rose Ann Branda, Esq. were not in contempt of this Court, because the Supreme Court had concurrent jurisdiction to make decisions regarding the scope of the automatic stay. The *Rooker–Feldman* doctrine bars this Court from reviewing the findings of the Supreme Court, and for this reason, the relief sought by the Debtor in this Motion is denied.

### ORDER DENYING THE DEBTOR'S MOTION TO REVERSE CONTEMPT FINDING BY STATE COURT, TO PROHIBIT INCARCERATION OF THE DEBTOR PURSUANT TO THE CONTEMPT ORDER, AND TO HOLD CATHERINE IVANI AND ROSE ANN BRANDA, ESQ. IN CONTEMPT OF COURT

Upon the filing of a motion by Richard J. Ivani (the "Debtor"), dated February 10, 2004, seeking reversal of the order of the Supreme Court of the State of New York, County of Richmond, dated January 26, 2004 (the "Contempt Order"), holding the Debtor in contempt of court for failure to pay arrears in child support, maintenance, attorneys' fees, and the outstanding award for equitable distribution; and Rose Ann Branda, Esq. having filed an Affirmation in Opposition dated February 24, 2004; and the Debtor having filed a Reply dated February 25, 2004; and a hearing having been held on February 27, 2004 (the "Hearing"); and the Court having considered the papers filed by the Debtor and by Rose Ann Branda, Esq., and the oral arguments raised by all parties at the Hearing; and for the reasons set forth in this Court's Memorandum Decision dated March 3, 2004; it is hereby

ORDERED, that the Debtor's motion to reverse the contempt finding and prohibit the incarceration of the Debtor is denied; and it is further

ORDERED, that the Debtor's motion to hold Catherine Ivani and Rose Ann Branda, Esq. in contempt of court is denied.